## CITY OF NORTH MANKATO v. ROBERT E. CARLSTROM.[1]

January 30, 1942.

No. 33,111.

[1]Reported in 2 N. W. (2d) 130.

*A. E. Everson,* for appellant.

*Arthur J. Berndt* and *G. P. Smith,* for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff prevailed in its suit for specific performance of a contract to convey certain land to defendant. The latter's blended motion for amended findings or new trial being denied, he appeals.

The land involved is a part of and lies within the platted area of plaintiff municipality. In April 1941, the parties entered into a contract whereby plaintiff agreed to sell and defendant to purchase and pay $125 for the land upon tender by plaintiff of a deed of special warranty, together with an abstract showing a "good and merchantable title" in plaintiff. Such deed was duly executed, abstract furnished, and both tendered to defendant, but he refused to go through with his bargain because, and only because, the description in the deed from the original owner under government patent and upon which the chain of title depends is "void for uncertainty of description of the premises" sought to be conveyed thereby, and that such defect "renders plaintiff's said title not good and not merchantable."

The facts are not disputed, since the abstract substantially tells the whole story. And this takes us back to territorial days, prior to our Civil War, when James Buchanan was our president. From it we find that on March 5, 1856, Joseph Guenther "located" an area of 135.15 acres, described by appropriate government survey, in Nicollet county, by means of a "military land warrant" issued pursuant to the "Military Bounty Land Act of March 3, 1855,"

34

10 St. c. 207 (1855) pp. 701, 702, 43 USCA, § 797, *et seq.* The warrant was accepted and the location approved on that day by the receiver of the United States Land Office at Winona, and the customary "Receiver's Certificate" was issued to him. A fee simple patent later followed to Guenther July 15, 1858.

In the meantime, on November 22, 1856, Guenther and wife, by deed of general warranty, conveyed a portion of the land to Isaac Marks and Asa White, describing it by metes and bounds. (This is the deed to which defendant refers as being fatally defective in describing the area sought to be conveyed.) Then, on July 7, 1860, these men executed a mortgage thereon, using the same description of the land as in their deed from Guenther, to one Charles Thompson to secure a loan of $503 with interest at 12 per cent. On July 16, 1864, Guenther and wife executed a new warranty deed to Marks and White which describes the property in such fashion that even defendant does not question its sufficiency. In that deed, after the description of the premises, there appears this recital: "being the same land conveyed or intended to be conveyed by the said parties of the first part to parties of the second part by deed dated November 22, 1856, and recorded" in the register's office of Nicollet county, correctly giving the book and page of the record of the former deed.

White later, on June 24, 1865, deeded his interest to his cotenant, Isaac Marks. On November 28, 1868, Marks and wife conveyed, subject to the "Tompson" mortgage "of $503 and two years' interest thereon at 12%," to William F. Lewis and Henry Shaubut. In 1869, the Thompson mortgage was foreclosed, and he became the purchaser at the sale. In the foreclosure proceedings the premises were described as in the original deed of November 22, 1856. There was no redemption, and ever since then only those claiming under him appear to have had or claimed any interest in the property. On July 22, 1885, James F. Thompson, who had succeeded to the rights of the original mortgagee, his wife joining, filed a plat of this area as "North Mankato," the present plaintiff, which has since succeeded to the title held by Thompson.

Defendant's claimed defect is limited to the starting point of the description of the area to be conveyed. The instrument reads:

"*Commencing at a stake* on the west bank of the Minnesota River in Nicollet County, nearly opposite the residence of M. Mills, Esqr. in the South West quarter of" (a given section, township, and range) "said stake *stuck by Evans Goodrich on the 22nd day of November A. D. 1856* [the date of the deed], thence running * * * containing 67 acres and 132 rods of land." (Italics supplied.)

Specifically, his complaint is that because no such stake can now be found and the Mills residence is gone no one can now locate the point of commencement; therefore, there is no description and consequently the deed is fatally defective. He proceeds in this fashion (appellant's brief, pp. 3 and 4):

"Evans Goodrich, who 'stuck the stake,' was the first county surveyor of Blue Earth county and held the office at the time in question. M. Mills, Esqr., opposite whose residence 'the stake was stuck' established his home in Mankato in 1853. At the time in question he was judge of probate of Blue Earth county. His residence was located on the easterly bank of the Minnesota River opposite the Guenther property, but the exact location of his residence is now unknown."

We think it must be conceded that Goodrich, the surveyor, and Mills, the probate judge, were men of competence and standing in that community. It seems rather farfetched now to say that the official surveyor was incompetent to make the survey or adequately to describe the result of his professional efforts.

Nor can anyone be much impressed with defendant's argument that the surveyor's stake was an inefficient point of commencement because it was not a "permanent monument." Whether the stake was of iron, wood, or other material is not disclosed. That it was sufficiently "permanent" to serve as a guide for anyone to locate the point of commencement is shown by the fact that when

the second Guenther deed was given the identical tract was found to contain 67 acres and 132 rods.

1. As pointed out in many cases, here and elsewhere, the term "marketable title" as applied to real estate (Hubachek v. Maxbass Security Bank, 117 Minn. 163, 168, 134 N. W. 640, 642, Ann. Cas. 1913D, 187) has "a well-defined and well-understood meaning. It is applied alike by substantially all the courts, and for the primary purpose of protecting the vendee in executory contracts for the sale of land from the burden of litigation which may be necessary to remove apparent or real defects in the title." Many of our prior cases are there cited, including Howe v. Coates, 97 Minn. 385, 107 N. W. 397, 4 L.R.A.(N.S.) 1170, 114 A. S. R. 723, where this "subject was fully considered  *  *  *  and practically all the authorities upon the question were cited."

2. Based upon these authorities, this court in the Hubachek case (117 Minn. 163, 169, 134 N. W. 640, Ann. Cas. 1913D, 187) defined the term as follows:

"A marketable title,  *  *  *  is one that is free from reasonable doubt; one that a prudent person, with full knowledge of all the facts, would be willing to accept.  *  *  *  The question is  *  *  *  whether  *  *  *  the title is so far free from doubt that a reasonable person, acting in good faith, would accept it. The question must be considered from the standpoint of the intending purchaser, and not from the viewpoint of the court."

On this subject, generally, see Annotation, 57 A. L. R. commencing at p. 1253. Our own cases will be found at p. 1258. The cases there annotated are helpful, since they include "in a comprehensive sense" all the cases "involving the duty of the vendor as to the quality of title he is to furnish under an executory contract for the sale of land." *Id.* p. 1256.

3. Of course, there must be a description sufficient to identify the property intended to be conveyed. It must be such as to identify the property or afford the means of identification aided by extrinsic evidence. 26 C. J. S., Deeds, §§ 29 and 30, and cases cited under notes.

4. But, as stated in 16 Am. Jur., Deeds, § 262:

"The courts are extremely liberal in construing descriptions of premises conveyed by deed with the view of determining whether those descriptions are sufficiently definite and certain to identify land and make the instrument operative as a conveyance. * * * and it may be laid down as a broad general principle that a deed will not be declared void for uncertainty in description if it is possible by any reasonable rules of construction to ascertain from the description, aided by extrinsic evidence, what property is intended to be conveyed."

Sustaining cases are found under note 14.

5. Even where the description is doubtful, "the court will keep in mind the position of the contracting parties and the conditions under which they acted and interpret the language of the instrument in the light of these circumstances." Under the maxim that "that is certain which can be made certain," courts properly "lean against striking down a deed for uncertainty of description of the land conveyed," and generally will adopt "a liberal rule of construction * * * to uphold the conveyance. So, if a surveyor with the deed before him can, with the aid of extrinsic evidence if necessary, locate the land and establish its boundaries, the description therein is sufficient." *Id.* and cases under notes. Government posts and corners frequently have become lost, as our cases abundantly demonstrate, yet that does not preclude the use of "extrinsic aids" to show their actual location. And so in this case, Mr. McDonald, a civil engineer of 44 years' experience, testified that with the extrinsic aid furnished by the second Guenther deed he could "now go upon the land and locate the Goodrich stake exactly."

6. Upon the facts recited, we can see no reason for differing with the court's conclusion that "from an examination of the abstract in this case, I do not think that reasonable minds can differ as to the identity of the land which the parties were contracting about when the mortgage [upon which plaintiff's title depends] in question was given." This, together with an unbroken line of

38

record ownership from the time of the foreclosure of the Thompson mortgage, extending as it does over a period of more than 72 years (*cf.* Ruff v. Gerhardt, 73 App. Div. 245, 248, 76 N. Y. S. 743, 745), can leave no reasonable doubt that plaintiff has a "good" title and a "marketable" one.

Order affirmed.