ANTON DITTRICH v. JOSEPH J. UBL.[1]

February 4, 1944.

No. 33,618.

[1]Reported in 13 N. W. (2d) 384.

*Albert Pfaender* and *S. P. Gislason,* for appellant.

*Flor & Reim,* for respondent.

YOUNGDAHL, JUSTICE.

Defendant appeals from a judgment determining that a building owned by him encroaches upon plaintiff's land so as to constitute a trespass, and ordering such building removed.

Prior to March 15, 1937, defendant was the owner of lots 12 and 13, block 57, in the city of New Ulm. On that date he executed and delivered to plaintiff a warranty deed conveying lot 13 described in said deed as follows:

"Lot Number Thirteen (13) in Block No. Fifty-seven (57) South of Center Street in the City of New Ulm, Brown County, Minnesota, according to the plat of said City on file and of record in the office of the Register of Deeds in and for said County."

The deed contained the usual covenants and warranties of title. Defendant retained ownership and possession of lot 12 and at the time of trial resided thereon. Plaintiff claims that defendant is guilty of trespass upon his property in that defendant's barn, most of which is located on lot 12, protrudes over the property line about 2.5 feet, and to that extent is actually located on plaintiff's lot 13. Defendant denies the charge of trespass and contends that the barn, which was built about 1899, is located entirely upon lot 12. Plaintiff bases his claim upon a private survey of his lot made in 1941, the results of which made such encroachment appear. Defendant relies upon the actual location of lot 13 upon the ground as determined "according to the plat" of the city of New Ulm provided for in plaintiff's deed.

In 1858 the city of New Ulm was duly incorporated, the lands within the corporate limits surveyed, and a plat prepared therefrom on which were designated and numbered the lots, blocks, streets, alleys, and public grounds. The plat specifies that each of the platted blocks material to this case is 350 feet square and divided into two tiers of seven lots each, separated by a 20-foot alley. Each lot is 50 feet wide and 165 feet deep from street to alley. The streets here involved are uniformly 80 feet in width. Center street appears on the plat and exists now as one of the main arteries of the city, running east and west. All parallel

streets south of Center street are numbered consecutively from First South street to Twentieth South street. Minnesota street is also shown on the plat and runs north and south, crossing Center street. The plat shows some slight deflection in direction as to all the street, lot, and block lines, but for our purposes here they may be considered as running due north, south, east, and west. Block 57 is bounded on the north and south by Eighth South and Ninth South streets respectively, on the west by Minnesota street, and on the east by German street. The lots involved in this action face the easterly side of Minnesota street and are between Eighth South and Ninth South streets.

The original plat of the city of New Ulm appears to have been lost, but a certified copy thereof, offered as an exhibit, indicates that one of the monuments used in the original survey was set in the center of Broadway and Center streets. Broadway runs parallel to Minnesota street one block to the west thereof and likewise intersects Center street. F. D. Minium, city engineer for New Ulm from 1912 to 1933 with the exception of 1924 and 1925, testified that this original monument has been replaced by a granite marker. He testified that it was used by his predecessors to locate the post office at Broadway and Center streets; that in fact he used it while acting as city engineer to locate the Methodist Church across from the post office; that, although the cross streets are now paved and the monument is located under the paving, its location can be ascertained now from the post office and the Methodist Church corners.

According to the plat, all blocks involved herein were 350 feet square. Actual measurements upon the ground, however, disclosed that in practically every instance, including block 57, the length was slightly more than that. In block 57 the length was 350.35. When street improvements were made, the surplus thus found was assigned to the particular block to which it applied and left for the property owners between the streets. Thus, in block 57 each of the seven lots received an additional .05 foot, increasing the frontage to 50.05 feet.

When plaintiff purchased lot 13 in 1937, a wire fence separated it from lot 14, which is the most northerly of the tier of lots in question and abuts upon Eighth South street. It appears that this fence was erected in 1906. There was also a fence, erected in 1897, between lot 11 and defendant's lot 12, which is still standing.

Prior to 1941, Minnesota street had been paved at least as far south from Center street as Twelfth South street, and Eighth South street had been graded from Minnesota street to Broadway. In making these improvements it appears that engineers and surveyors for the city on several occasions used as a point of beginning one certain landmark in the form of an iron pipe located in the northwest corner of Minnesota street and Seventh South street, which is hereinafter referred to as the Behnke corner. Mr. Behnke, who has resided on that corner about 50 years, indicated that the landmark has been there for about 40 years. Another monument frequently used for street improvements was a concrete marker located in the southwest corner of Minnesota street and Eighth South street. It appears that this monument has been located there for a shorter period of time than the one at the Behnke corner.

The results of plaintiff's private survey of 1941 were reached by using as a point of beginning the iron pipe at the Behnke corner and the concrete monument located in the southwest corner of the intersection of Minnesota and Eighth South streets, together with certain markers located on the northwest and northeast corners of lot 14. There is no dispute in the testimony that, in using the Behnke corner as a point of beginning, the most southerly boundary of lot 13 would extend approximately 2.5 feet farther south than would be the case if the original marker located at the center of Broadway and Center streets were used as such initial point of survey and the survey made according to the plat of the city of New Ulm. Plaintiff contends that his private survey properly located the southerly boundary of lot 13 and thereby disclosed the encroachment of defendant's barn upon his property.

Plaintiff's cause of action is founded in trespass. His case stands

or falls upon the proposition that the monuments used in his private survey as starting points were the proper ones.

Defendant asserts that no trespass has been shown; that plaintiff has failed to use as a point of beginning a monument which is specifically referred to on the plat and the original position of which can be definitely located on the ground at the center of Broadway and Center streets; and that the monuments adopted by plaintiff cannot be traced back to the original monuments as located on the ground when the first survey was made.

The lower court found that the Behnke monument at Minnesota and Seventh South streets, the concrete monument at Eighth South and Minnesota streets, and the line of the streets here involved were proper monuments to be used in making plaintiff's survey; that such survey revealed that defendant's barn extended 2.5 feet onto plaintiff's premises; and that therefore a trespass had been committed.

Our problem is to determine whether there is any evidence reasonably tending to sustain the court's findings. If there is, there must be an affirmance under the familiar rule that where there is reasonable evidence to sustain the findings of the trier of fact such findings cannot be disturbed on review, although there may be evidence to the contrary.

1. It is a well-settled principle that if lands are granted according to an official plat of the survey of such lands, the plat itself, with all its notes, lines, descriptions, and landmarks, becomes as much a part of the grant or deed as if such descriptive features were written out upon the face of the deed or grant itself, and controls so far as limits are concerned. Nicolin v. Schneiderhan, 37 Minn. 63, 33 N. W. 33; Turnbull v. Schroeder, 29 Minn. 49, 11 N. W. 147; Fox v. Union Sugar Refinery, 109 Mass. 292; Jefferis v. East Omaha Land Co. 134 U. S. 178, 10 S. Ct. 518, 33 L. ed. 872. Monuments are the best evidence of the lines and corners actually made by a survey, and, when ascertained, are satisfactory and conclusive evidence of the location of the lines as originally run. 8 Am. Jur., Boundaries, § 59, states:

"\* \* \* Monuments set at the time of an original survey on the ground and named or referred to in the plat are the best evidence of the true line."

The questions in the instant case are: (1) Where is the true northerly line of lot 12 on the ground as fixed by the original plat? (2) Is the barn in question over that line? The description in the deed is clear. There is no claim of mistake or ambiguity in that regard. The question is rather one of location and identification of the lots upon the ground in accordance with the proper survey. Neither is there a conflict of distances in the recorded plat with stakes set in making the survey according to such plat, which was the situation in Turnbull v. Schroeder, *supra,* upon which plaintiff relies. The dispute arises in the instant case over which survey shall be relied upon and which monuments shall be used as starting points for the survey. The following statement appears on the certificate of the plat:

"Monuments for surveys are set in center of Broadway and Center Streets and corner of Outlot No. .... and Garden and Front Streets.

"[Signed] C. Prignitz,

"Surveyor."

[A black dot is shown in the center of the intersection of Broadway and Center streets.]

It will be noted that the monuments mentioned at the corner of the outlot and Garden and Front streets are indefinite. The only monument mentioned on the plat now ascertainable is the one at the center of Broadway and Center streets. With this monument as a starting point and measuring the distances described on the plat, defendant's lot is located on the ground where he claims it to be, and there is no trespass by virtue of the barn encroaching 2.5 feet upon plaintiff's lot.

Plaintiff asserts that this is not an original monument. That must be conceded. It is a replacement monument, but it is located in the exact place mentioned on the plat. Extrinsic aids to

show actual location of original monuments may be used. It is competent to prove by parol the location thereof and, if lost or destroyed, the places where they were set. Turnbull v. Schroeder, 29 Minn. 49, 11 N. W. 147; Borer v. Lange, 44 Minn. 281, 46 N. W. 358; City of North Mankota v. Carlstrom, 212 Minn. 32, 2 N. W. (2d) 130. Two buildings, the post office and the Methodist Church, were properly identified by plaintiff's witness Mr. Minium as having been located with this monument as a starting point. Since the replacement granite marker at Center street is now under the pavement and cannot be used as the starting point, that point would have to be determined by the corners where said buildings are now located. Mr. Minium states that this can definitely and accurately be done. Such a monument becomes conclusive in determining the starting point of a survey. City of Racine v. Emerson, 85 Wis. 80, 55 N. W. 177, 39 A. S. R. 819; Arms v. City of Owatonna, 117 Minn. 20, 134 N. W. 298; 8 Am. Jur., Boundaries, § 8.

In support of the resurvey taken shortly before the commencement of this action, plaintiff relies upon the use of the Behnke monument at Minnesota and Seventh South streets, the concrete marker at Eighth South and Minnesota streets, and the lines of the streets at said intersection. The Behnke monument is the oldest of these. It dates back over 40 years. In 1912, Mr. Minium was informed by Mr. Blomquist, a former city engineer, that the marker had been used by other engineers preceding Minium. Despite its use for many years, its origin is not shown. It is not traceable to the original plat. It does not appear to be a replacement of an original monument designated on the plat. Neither is the concrete marker at Eighth South and Minnesota streets traceable to the monument designated on the plat.

█ Plaintiff relies strongly upon the fact that the Behnke monument has been used in laying out improvements by the city and that the streets themselves may serve as monuments for starting points. In support thereof he quotes 4 R. C. L., Boundaries, § 37, reading:

"A street may be a monument, *and in the absence of other con-*

*trolling calls or landmarks* which can be ascertained, the location and occupancy of a street as indicated by * * * its use for many years, may be taken as practical evidence of the true location of the street, and the lines of the street may then determine the location of the boundaries of abutting lands." (Italics supplied.)

We have no quarrel with this rule, but plaintiff does not bring himself within it under the facts in the case at bar. This is not a situation where there is an *"absence of other controlling calls or landmarks which can be ascertained,"* but, on the contrary, the record shows a definite monument directly traceable to the one described on the original plat itself.

■ The lower court's finding that the Behnke corner replaced one of the original wooden stakes set during the original survey is not sustained by the evidence. Aside from the testimony of Minium that he was advised that other surveyors had used this corner as a starting point, there is no evidence to indicate how and under what circumstances the monument was established, nor to retrace it to the plat itself. One must indulge in speculation in order to connect it with the plat. Although corners have been established in connection with street improvements for 20 or 30 years, it does not follow that a monument mentioned in a plat may be disregarded if no error or mistake appears and if there is no conflict between such monument and distances measured therefrom. The fact that there was some slight discrepancy in the measurements does not assist plaintiff. It is stated in 8 Am. Jur., Boundaries, § 59:

"Purchasers of town lots generally have the right to locate their lot lines according to the stakes as actually set by the platter of the lots, and no subsequent survey can unsettle such lines. In the event of a subsequent controversy the question becomes not whether the stakes were located with absolute accuracy, but whether they were planted by authority, and whether the lots were purchased and taken possession of in reliance upon them. If such was the case, the rule appears to be well established that they must govern notwithstanding any errors in locating them."

See also LeCompte v. Lueders, 90 Mich. 495, 51 N. W. 542; Flynn v. Glenny, 51 Mich. 580, 17 N. W. 65.

Plaintiff suggests that a determination in defendant's favor will upset the boundaries of numerous lots in the city of New Ulm which have been determined from surveys made in reliance upon the Behnke monument and upon the established streets and highways and other improvements made by the city. Our answer to this is that our only concern here is whether defendant has committed a trespass by the encroachment of his barn 2.5 feet upon plaintiff's lot. In determining that question we are confronted only with the issue of where plaintiff's lot is located on the ground. If it is located on the ground in accordance with the original survey and plat, there has been no trespass, and we are not concerned with boundaries not here involved. The difficulty with plaintiff's attempt to prove trespass against defendant is that it is necessary for him to rely upon a resurvey made in 1941, four years after the conveyance in question. A resurvey that changes lines and distances and purports to correct inaccuracies or mistakes in the old plat is not competent evidence of the true line fixed by the original plat. 8 Am. Jur., Boundaries, § 102; Cragin v. Powell, 128 U. S. 691, 9 S. Ct. 203, 32 L. ed. 566, following the rule of City of Racine v. Emerson, 85 Wis. 80, 86, 55 N. W. 177, 178, 39 A. S. R. 819, where the court stated:

"* * * A resurvey must agree with the old survey and plat to be of any use in determining it. * * * Resurveys for the lawful purpose of determining the lines of an old survey and plat are generally very unreliable as evidence of the true lines. The fact, generally known and quite apparent in the records of courts, is that two consecutive surveys by different surveyors seldom, if ever, agree; and the greater number of surveys, the greater number of differences and disagreements will occur. When two surveys disagree, the correct one cannot be determined by still another survey. It follows that resurveys are of very little use in such a case as this, except to confuse it."

■ Further fortifying defendant's position that no trespass had been committed are the facts that the barn has been located in the same position since about 1899; that the fence separating lots 11 and 12 has been in the same position since 1897; and that a fence stood between lots 13 and 14 from 1906 until removed by plaintiff in 1937, indicating that the intention of the parties was governed by the location of the lots on the ground as designated on the plat and that the parties placed a practical construction upon the location of the lots in accordance with the measurements of the plat. In the last analysis, the call adopted as the superior and controlling one should be that which is most consistent with the apparent intent of the grantor. 129 A. S. R. 991, annotation, subd. II. The cardinal rule is to ascertain and give effect to the intention of the parties. In case of doubt, courts should consider the facts and circumstances attending the execution of a deed, the practical construction of it by the parties and their grantees, and the preliminary negotiations. Simms v. Fagan, 216 Minn. 283, 12 N. W. (2d) 783; Sandretto v. Wahlsten, 124 Minn. 331, 144 N. W. 1089. A building or fence constructed according to stakes set by a surveyor at a time when these were still in their original locations may become a monument after such stakes have been removed or disappear, and, next to stakes, they may be the next best evidence of the true line. City of Racine v. Emerson, 85 Wis. 80, 55 N. W. 177, 39 A. S. R. 819, *supra*. Defendant's survey used as a starting point the fence in question; and, in accordance with such survey, defendant's lot is actually located on the ground where it should be in accordance with the plat and if the monument at Broadway and Center streets had been used as a starting point. The record conclusively shows that defendant's barn does not encroach upon plaintiff's lot, and there is no trespass by defendant.

In view of this finding, it is unnecessary to consider the further questions raised by defendant as to practical location and bringing in additional parties.

Reversed with directions to enter judgment for the defendant.

Mr. Chief Justice Loring, being engaged on the pardon board, took no part in the consideration or decision of this case.

Mr. Justice Streissguth took no part in the consideration or decision of this case.

[1]Reported in 13 N. W. (2d) 38.