# JOHN J. DALY v. DUWANE CONSTRUCTION COMPANY AND OTHERS.

106 N. W. (2d) 631.

December 9, 1960—No. 37,942.

*John S. Connolly, D. T. Cody, J. M. Daly,* and *George M. Waldrup,* for appellant.

*LeVander, Gillen & Miller,* for respondent Dakota County Electric Co-op.

*Tyrrell, Jardine, Logan & O'Brien,* for other respondents.

THOMAS GALLAGHER, JUSTICE.

Action for treble damages under Minn. St. 561.04[1] by John J. Daly, plaintiff, against L. E. Parkyn, doing business as Duwane Construction Company; Vincent Majerus; and Dakota County Electric Co-op., a corporation, defendants, for their wrongful removal of a number of trees from plaintiff's land in Dakota County.

The case was tried before the Honorable W. A. Schultz, and on May 11, 1959, the jury returned a verdict in favor of defendants. Thereafter, on May 23, 1959, upon the minutes, plaintiff moved for an order setting aside the verdict and granting him a new trial. This motion was set for hearing on June 5, 1959, but later it was stipulated by the parties that the time for hearing be extended to June 19, 1959.

---

[1]Minn. St. 561.04 provides: "Whoever without lawful authority cuts down or carries off any wood, underwood, tree, or timber, or girdles or otherwise injures any tree, timber, or shrub, on the land of another person, or in the street or highway in front of any person's house, village, or city

In the meantime, on May 15, 1959, in another action in the District Court of Dakota County, J. M. Daly, one of the counsel for plaintiff in this action, filed an affidavit of prejudice against Judge Schultz.

On June 19, 1959, counsel in the present action appeared before Judge Schultz to argue plaintiff's motion to set aside the verdict and for a new trial. Preliminary to this hearing, Judge Schultz stated to plaintiff's counsel: "I am a prejudiced judge in this case. Why didn't you file an affidavit of prejudice against me? I cannot hear this motion as I am a prejudiced judge." In a memorandum, Judge Schultz sets forth that those remarks were made because of his impression that that motion was in some new proceeding and that it was his intention to voluntarily disqualify himself therein because of the affidavit of prejudice above referred to.

Thereafter, plaintiff's motion was submitted without oral argument upon briefs to be filed within 10 days. On July 24, 1959, plaintiff's counsel filed a new motion upon the minutes for an order setting aside the verdict and for a new trial upon the ground that Judge Schultz' remarks indicated such prejudice as to have disqualified him from exercising jurisdiction at the time of the trial and accordingly that the verdict therein and any judgment based thereon would be void. At the hearing on this motion on August 12, 1959, defendants' counsel appeared specially and objected to the motion on the ground that no extension of time for it had been granted and accordingly that the court was without jurisdiction to act thereon.

---

lot, or cultivated grounds, or on the commons or public grounds of any city or town, or in the street or highway in front thereof, is liable in a civil action to the owner of such land, or to such city or town, for treble the amount of damages which may be assessed therefor, unless upon the trial it appears that the trespass was casual or involuntary, or that the defendant had probable cause to believe that the land on which the trespass was committed was his own, or that of the person in whose service or by whose direction the act was done, in which case judgment shall be given for only the single damages assessed. This section shall not authorize the recovery of more than the just value of timber taken from uncultivated woodland for the repair of a public highway or bridge upon or adjoining the land."

On September 1, 1959, the trial court made its order denying both of plaintiff's motions. In a memorandum to this order it set forth the following:

"The verdict in the above case was rendered * * * on May 11, 1959; on May 15, 1959, an affidavit of prejudice was filed against the undersigned judge in the following case, as follows:

" ' State of Minnesota     District Court
County of Dakota     Eighth Judicial District

William R. Kaufmann and
Mary L. Kaufmann,

*Plaintiffs,*

vs.

State of Minnesota,

*Defendant.*

" 'AFFIDAVIT OF PREJUDICE
" ' State of Minnesota
County of Ramsey * * *
" ' J. M. Daly, being first duly sworn, deposes and states that because of bias and prejudice on the part of W. A. Schultz * * * a fair trial cannot be had before said W. A. Schultz in the above entitled action.'

\*    \*    \*    \*    \*

"That the undersigned judge was informed thereof prior to the hearing of the instant case on June 19, 1959 * * *. That other affidavits of prejudice have been filed by J. M. Daly against Judge William C. Christianson, which said undersigned judge determined also to be unwarranted.

"That when the instant motion for a new trial came on June 19, 1959, the undersigned Judge did not notice the title of the case but assumed it was an *entirely new case* to be presented by said John J. Daly; thereupon, the court called said attorney J. M. Daly and the defendant's attorneys to the bench and asked J. M. Daly: 'Why haven't

you filed an affidavit of prejudice against me, I am a prejudiced judge you know'; it being the intention of the undersigned Judge to *voluntarily* disqualify himself from hearing any *new cases* in which *J. M. Daly* was involved; * * *.

"That said W. A. Schultz was in no way biased or prejudiced at the trial of the above case nor upon the hearing of the motion for a new trial, * * *."

On September 1, 1959, the judgment in favor of defendants was entered. On this appeal therefrom plaintiff contends that the trial court erred (1) in receiving in evidence an agreement for easement dated November 22, 1937, between plaintiff and Dakota County Electric Co-op., hereinafter designated as the power company, because the legal description therein was so ambiguous and indefinite as to make the agreement void; (2) in charging the jury that under this easement, if it were not obtained by fraud, defendant power company had the right to enter plaintiff's lands adjacent to the right-of-way upon which its lines were maintained to cut and trim trees to the extent reasonably necessary to preserve and protect such lines; and (3) in regard to Judge Schultz' failure to disqualify himself because of bias and prejudice against plaintiff and his counsel.

The November 22, 1937, agreement for easement provides as follows:

"KNOW ALL MEN BY THESE PRESENTS, That the Grantors John J. Daly & Marie P. Daly of the County of Dakota and State of Minnesota, for One Dollar and other good and valuable consideration, the receipt of which is hereby acknowledged do hereby grant unto THE DAKOTA COUNTY ELECTRIC COOPERATIVE, a corporation, * * * the right to enter upon the lands of the grantors situated in Section 24 of Lakeville Township, in the County of Dakota, State of Minnesota, more particularly described as follows:

"S E 1/4 of Section 24.

"and

"(1) to place, construct, repair, maintain, relocate and replace thereon anchors, anchor stubs and guy wires necessary or advisable for the construction, operation, replacement, repair and maintenance,

in and upon any road or highway abutting the lands above described, of and electric transmission or distribution line or system; and to cut and trim trees interfering with the placing and maintenance of said anchors, anchor stubs, and guy wires;

"(a) *to cut and trim trees to the extent necessary or advisable* **for** the construction, operation, replacement, repair and *maintenance* in and upon any road or highway abutting the lands above described, of and electric transmission or distribution line or system including the right to cut down, from time to time, all dead, weak, leaning or dangerous trees that are tall enough to strike the wires in falling.

"The grantors covenant that they are the owners of the above described lands and waive any claim for damages against said grantee in the reasonable exercise of the above rights granted." (Italics supplied.)

Plaintiff testified that at the time he executed the foregoing agreement he was advised by a Mr. Gelder, a representative of the power company, that it wanted him to sign the easement so that it could put a guy wire inside his property line, and he signed in reliance upon such representative because he wanted electricity like every other farmer and "cooperated and went along." In submitting the issue of fraud and others to the jury, special interrogatories were given to the jury for specific findings as follows:

"Was the signature of plaintiff, John J. Daly, to the easement, Defendant's Exhibit 1, obtained by fraud? * * * Answer: No.

\* \* \* \* \*

"Were more trees cut on plaintiff's land than was reasonably allowed to be cut by the valid easement? * * * Answer: No."

In its general instructions, the court further charged the jury as follows:

"\* \* \* That [reasonableness of and necessity for cutting trees] will be for you to determine, unless you determine that the signature to the easement or agreement of John J. Daly, the plaintiff, was procured by a misrepresentation made to him by Mr. Gelder that the agreement was only for an anchor line on his premises. This is known

as fraud, * * *. It is claimed by John J. Daly that it was represented to him that the instrument that he was signing was a consent to the Power Company to place an anchor upon his property, and he, John J. Daly, claimed that he believed it to be true and, therefore, signed the instrument. * * *

"If you determine that the plaintiff, John J. Daly, has proved by a fair preponderance of the evidence that his signature was obtained by fraudulent representation, and that he, John J. Daly, signed the easement in reliance upon the statement made to him, as he claims, by Mr. Gelder, then the agent of the Power Company, then you must determine that Defendant's Exhibit 1, the easement, is of no force and effect, and that there was no easement or right existing in the Power Company to cut and trim any of the trees outside of the right-of-way. * * *

\*   \*   \*   \*   \*

"If you determine that the plaintiff has failed to prove that the easement was procured by fraud, you are instructed that the easement, Defendant's Exhibit 1, gives the defendant the right to enter upon the land of the plaintiff and cut and trim trees which must necessarily and reasonably be cut. If it was reasonable to trim any of the trees rather than cut them down, then the defendants were required to trim those trees by cutting the tops off or trimming their limbs in a reasonable manner."

At the trial of the action substantial testimony was submitted in the form of expert opinion as to the value of plaintiff's land immediately before and after the trees had been cut and trimmed by the power company. Defendants' witness testified to the effect that in his opinion its value immediately before and after the trees had been cut and trimmed thereon was exactly the same. Workers engaged by the power company to do the cutting testified that no trees had been cut or destroyed except those which would have caused damage to the transmission lines in falling. Plaintiff submitted testimony that the trees cut by defendants were not dead and were not located so as to endanger the lines of the power company in any way.

■ We feel that the evidence is amply sufficient to support the

jury's finding that the agreement for easement executed by plaintiff on November 22, 1937, was not obtained by fraud. It was upon a form commonly used by power companies at the time in situations where their lines were adjacent to property upon which trees were a source of danger to the lines because of their proximity. Subsequent to its execution, the power company had entered upon plaintiff's land on two occasions for the purpose of trimming trees and no protest was made by plaintiff in connection therewith. The agreement is simple in form and its language is reasonably clear. Plaintiff was a man of intelligence, and the jury had the right to infer that he had read it before executing it. He testified that he had an opportunity to read it and that no one forced him to sign it. Where the object is to avoid a written instrument on the ground that a contracting party was fraudulently induced to execute it upon the false representation of another, the evidence must be clear and convincing. Hentges v. Schuttler, 247 Minn. 380, 383, 77 N. W. (2d) 743, 746; Giller v. First Nat. Bank, 151 Minn. 414, 186 N. W. 816. Under governing principles we are satisfied that the jury's verdict on the issue of fraud was amply sustained.

■ Likewise, we fail to find such ambiguity in the legal description in the easement as to render it void. Plaintiff owned but one tract of land in Lakeville Township—the southeast quarter of section 24. From this fact the tract intended to be covered by the easement could be readily ascertained. It has been held that the legal description in a deed or conveyance is sufficient if the land described therein can be located by a competent surveyor. Curtiss & Yale Co. v. City of Minneapolis, 123 Minn. 344, 144 N. W. 150; Paynesville Land Co. v. Grabow, 160 Minn. 414, 200 N. W. 481; 5 Dunnell, Dig. (3 ed.) § 2659a. It has also been held that such descriptions are not to identify the land but to furnish the means of identification. Paynesville Land Co. v. Grabow, *supra*. The courts are extremely liberal in construing legal descriptions with the view of determining whether they are sufficiently definite to identify the land and make the instrument operative as a conveyance and will not declare an instrument void for uncertainty if it is possible by any reasonable rules of construction to ascertain from the description, aided by extrinsic evidence,

what property was intended to be conveyed. City of North Mankato v. Carlstrom, 212 Minn. 32, 2 N. W. (2d) 130. Applying any of these tests here compels the conclusion that the easement was valid.

◼ Likewise, it seems clear that the court's construction of the easement was correct. By its language it authorizes the power company to enter upon plaintiff's lands "to cut and trim trees to the extent necessary or advisable for the * * * operation * * * and maintenance in and upon any road or highway abutting the lands above described, of and electric transmission or distribution line or system including the right to cut down, from time to time, all dead, weak, leaning or dangerous trees that are tall enough to strike the wires in falling." It seems obvious that the parties intended thereby to protect the lines from the danger of trees upon adjacent land falling against them and for this purpose procured from plaintiff an easement to enter upon his lands adjacent to the lines and to cut and trim the trees thereon which were a source of danger. Certainly there would be no purpose in describing plaintiff's land if the right to cut and trim the trees extended only to those actually on the right-of-way upon which the lines were to be maintained. It would follow that the jury's verdict in defendants' favor based upon its finding that the easement was valid and that defendant power company did not cut down more trees than were reasonably allowed 'to be cut by such easement is amply supported by the evidence and must be sustained.

◼ With reference to plaintiff's claim that the trial court should have disqualified itself for prejudice, we find no merit therein. The record clearly indicates that the court conducted the trial in a fair and impartial manner and in fact was extremely liberal in submitting issues and instructing the jury in accordance with plaintiff's contentions, even though some of them found little support in the evidence. Following the trial, any statement of the court made with reference to the practice of plaintiff's counsel in filing affidavits of prejudice would have had no bearing upon this action which by that time had been tried, submitted to the jury, and finally determined adversely to plaintiff.

Affirmed.