**Howard F. STAPLES, Appellant,**

v.

**Mary Staples MILLER, et al., Respondents.**

**No. 81–44.**

Supreme Court of Minnesota.

May 14, 1982.

Kenneth A. Sandvik, Two Harbors, for appellant.

Johnson, Thomas & Morris, Silver Bay, for respondents.

WAHL, Justice.

Howard Staples brought this action against the heirs of his brother, Robert, to establish title in himself to a 40-acre parcel of land which he and his brother had owned as tenants in common.[1] Defendants are Robert's children and Mary Staples Miller, who was Robert's wife at the time of his death. The trial court held that Robert's heirs continue to own an undivided one-half interest in the property. We reverse and remand for additional proceedings.

In 1957, Sarah Staples, the mother of Robert and Howard, conveyed the subject property to her two sons as tenants in common, reserving a life estate for herself. After Sarah's death later that year, the brothers satisfactorily divided other property they held as tenants in common but were unable to agree on disposition of the subject property. Hence, on December 16, 1958, they executed a written agreement stating they had "mutually agreed they shall continue to own and hold together, as joint tenants and not as tenants in common" the subject parcel. Howard claims this agreement created a joint tenancy in Robert and himself and that he therefore became the sole owner of the property upon Robert's death in 1967.

In the agreement of December 16th, the brothers agreed that, upon the death of one of them, the survivor brother would, in

---

1. The property is described as the NE ¼ of NE ¼ of Section 29, Township 54 North, Range 10 West, Lake County, Minnesota.

consideration of the deceased's interest, pay up to $1,000 toward burial and funeral expenses of the deceased brother. The document, which was signed and witnessed, also set forth a legal description of the subject property as well as the names of the parties and the county of their residence.

At the time of the December 16th agreement, Robert was married to Mary, and Howard was divorced. Howard was living in a house on the subject property, and he continues to live there. Before his death, Robert used the land and shared the costs and expenses of ownership of the property, but it was not his homestead. Since Robert's death, Mary has kept some horses and cows on the property, but her use has been on a much smaller scale than Robert's had been. Howard assumed full responsibility for maintaining and caring for the property, including payment of taxes. Mary has never offered to pay any of the expenses of the property.

In the years since Robert's death, Howard has assumed that the entire property was his, while Mary has assumed that her one-half interest remained secure. Although Howard knew Mary had to "do some certain procedures" before the property would be his alone, he understood those procedures had been done. Mary also knew there would need to be a "legal court transaction" before her interest was secure. However, when Robert's estate was probated in 1970, the subject property was not part of the probated estate.

Howard first realized the property was not his alone when he tried to mortgage it in 1979 in order to lend his son some money. He then approached both Mary and Martin Staples with a request that Mary "sign off the property." However, Mary and her children decided they would not sign over their interest in the property, and Howard has refused to pay them anything for their claimed share.

There is a discrepancy in the trial testimony as to Howard's payment of $1,000 toward Robert's funeral and burial expenses. Howard testified that he paid $500 directly to the funeral director and another $500 to Mary. The court received into evidence a receipt from the Johnson Funeral Home for $500 which was dated March 2, 1967, and a photocopy of a check from the Two Harbors Credit Union, dated June 12, 1967, payable to Howard and Mary and endorsed in their names. Mary acknowledged the fact that Howard paid $500 toward the funeral bill and identified her signature on the back of the check. However, she claims not to have received $500 from Howard.

The trial court found that, at the time of Robert's death, the brothers owned the property as tenants in common because the agreement of December 16th had not been acknowledged and, therefore, could not be recorded. Under the trial court's decision, half of the property would descend to the defendants, Robert's heirs. Because it found the agreement of December 16th invalid on other grounds, the trial court made no findings as to the amount of consideration actually paid by Howard.

Was the agreement between Robert and Howard Staples, dated December 16, 1958, a valid conveyance of real estate?

■ Under Minnesota law, "[t]he word 'conveyance' * * * includes every instrument in writing whereby any interest in real estate is created, aliened, mortgaged, or assigned or by which the title thereto may be affected in law or in equity." Minn.Stat. § 507.01 (1980). A contract for the conveyance of real property must satisfy the Statute of Frauds. Minn.Stat. § 513.04 (1980). We have said that

a written contract for the conveyance of land, to satisfy the statute of frauds, need only provide that degree of certainty which is reasonably necessary to identify the parties, the land to be conveyed, and the terms and conditions of the promises made by the respective parties to each other.

*Doyle v. Wohlrabe*, 243 Minn. 107, 110, 66 N.W.2d 757, 761 (1954) (footnote omitted).

■ It is possible to identify both the parties and the property from their descriptions in the agreement of December 16th;

therefore, the descriptions satisfy the Statute of Frauds. *See Daly v. Duwane Construction Co.*, 259 Minn. 155, 106 N.W.2d 631 (1960). The terms and conditions under which each brother agreed to place the property in joint tenancy were that (1) each gave up the incidents of cotenancy, including the right to leave his one-half interest to someone else, and (2) the survivor brother agreed to pay up to $1,000 toward the burial and funeral expenses of the first to die.[2] We find this consideration adequate to support the conveyance. *Ketterer v. Independent School District No. 1*, 248 Minn. 212, 79 N.W.2d 428 (1956); *Bowen v. Willard*, 203 Minn. 289, 281 N.W. 256 (1938).

■ We then must ask whether the agreement properly creates a joint tenancy. Under Minnesota law, "All grants and devises of lands, made to two or more persons, shall be construed to create estates in common, and not in joint tenancy, unless expressly declared to be joint tenancy." Minn.Stat. § 500.19, subd. 2 (1980). Since Howard and Robert Staples stated in their agreement of December 16, 1958, that they would own the subject property "as joint tenants and not as tenants in common," their agreement creates a valid conveyance in joint tenancy.[3]

■■ The trial court wrongly concluded that, because the agreement had not been acknowledged or recorded, it was invalid. It is true that a conveyance must be acknowledged before it can be recorded, Minn.Stat. § 507.24 (1980), and that a conveyance must be recorded in order to be valid as against a subsequent purchaser or as against an attachment levied or a judgment obtained thereon, Minn.Stat. § 507.34 (1980). However, an unrecorded convey-

ance is valid under other circumstances. *Underleak v. Scott*, 117 Minn. 136, 139–40, 134 N.W. 731, 733 (1912). The purpose of the acknowledgment is to prove the execution of the conveyance. P. Basye, Clearing Land Titles § 241 (2d ed. 1970). In the absence of an acknowledgment, execution may be proved by proving the handwriting of a grantor who has since died. Minn.Stat. § 507.23 (1980). We find that Robert Staples signed the agreement of December 16th.[4]

We must still assess Mary's interest in the property. Under Minnesota law, a "husband, by his separate deed, may convey any real estate owned by him * * * subject to the rights of his wife therein." Minn.Stat. § 507.02 (1980). Therefore, the conveyance of December 16th is subject to Mary's rights, which include the right to inherit one-third of all real property of which Robert was possessed during their marriage. Minn.Stat. § 525.16 (1980). However, Mary's right to claim her one-third interest has expired under another Minnesota law which limits the time during which a surviving spouse may lay claim to his or her statutory share of a decedent spouse's property. "All inchoate estates or statutory interests in lieu of dower and curtesy in all lands in this state which have been conveyed prior to January 1, 1960, * * * are hereby abolished." Minn.Stat. § 519.09 (1980). Since the conveyance took place in 1958, Mary's right to one-third of Robert's share has been extinguished by this statute.

■ We hold that the agreement between Robert and Howard Staples, dated December 16, 1958, was a valid conveyance of real estate which created a joint tenancy in the two brothers, subject to the rights of

---

**2.** The agreement states that the survivor will pay this amount "as part of the consideration *for the said deeds.*" (Emphasis added.) This agreement was also supported by the surrender, on the part of each brother, of his one-half interest in two other pieces of property.

**3.** In 1979, the Minnesota legislature abolished the common-law requirements of a joint tenancy: unity of time, title, interest and possession. Minn.Stat. § 500.19, subd. 3 (1980). Although the statute does not apply to this conveyance,

we find that the unities are fulfilled here because the brothers' interests were created in the same conveyance from Sarah Staples. *See Creek v. Union National Bank*, 266 S.W.2d 737 (Mo.1954).

**4.** The agreement was witnessed by two persons, one of whom was an attorney. Howard Staples and Robert's son, William, testified at trial to the validity of Robert's signature, and Mary Staples has not disputed its validity.

Mary Staples Miller, and that her rights have now been extinguished by her failure to assert them within the statutorily-prescribed time. It is troublesome to conclude as we do that one spouse can bargain away the other's property interest without his or her knowledge. However, Mary could easily have included this property in the probate of Robert's estate. She has known for many years that she should take some legal steps to preserve her interest in the subject property and yet has failed to take those steps. We find that this case does not differ from any other case which would be determined under Minn.Stat. § 519.09 and that the public interest in marketability of title outweighs Mary's right to claim her share at this late date. The trial court holding is reversed, and the case is remanded for a determination as to whether the full amount of consideration has been paid.

Reversed and remanded.

KELLEY, J. took no part in the consideration or decision of this case.