Terrance R. MAGNUSON, et al.,
d/b/a WARROAD MARINE,
Respondents,

v.

JOHN J. COSSETTE, d/b/a Spearfish
Aviation, Inc., Appellant.

No. A05–377.

Court of Appeals of Minnesota.

Jan. 17, 2006.

Michael L. Jorgenson, Charlson & Jorgenson, P.A., Thief River Falls, MN, for respondents.

Steven A. Nelson, International Falls, MN, for appellant.

Considered and decided by PETERSON, Presiding Judge; RANDALL, Judge; and DIETZEN, Judge.

## OPINION

DIETZEN, Judge.

Appellant challenges the district court order and judgment denying his claim for riparian rights to the Warroad Marina Bay, and concluding that appellant's property is burdened by a prescriptive easement and an easement by implication of necessity for use of a road across his property. Because we find that appellant's property does not have riparian rights, and appellant's property is burdened by an easement by implication of necessity but not a prescriptive easement, we affirm in part and reverse in part.

## FACTS

Respondents Terrance, Margaret, and Kevin Magnuson own and operate the Warroad Marina on the south shore of Lake of the Woods near Warroad, Minnesota. Appellant John Cossette owns a recreational vehicle (RV) park located adjacent to, and directly north of, the marina. Both properties are located to the west of Lake of the Woods.

### Marina Property

Prior to 1988, Robert Anderson, through a limited partnership, was the common owner of the land upon which both the marina and RV parcels are located.[1] Anderson was also the previous operator of the Warroad Marina. The marina property consists of three parcels: a triangular parcel east of the marina (east parcel), the marina parcel, and a rectangular parcel located north (north parcel) of a 75–foot channel (east channel) that runs easterly, and connects the marina bay to Lake of the Woods. The marina bay is located generally in the center of the three marina parcels and is available to lease for the mooring of watercraft.

A six-inch wide corrugated aluminum "sea wall" was constructed to prevent erosion of the shore-line of the marina bay and the north-bank of the east channel. The sea wall commences on the northwest point of the marina bay and follows the general contour of the bay, running approximately 113 feet north-south, and then east-west another 315 feet along the north bank. The sea wall comes within inches of the shoreline, but does not extend into or abut the water.

Anderson, as the operator of Warroad Marina, was required to perform periodic dredging of the marina bay and east channel to maintain navigability, and access to Lake of the Woods. The dredging operations consisted of transporting heavy equipment to the north parcel, dredging of a portion of the marina bay and east channel, placement of the dredge spoils on the north-bank of the north parcel, and transporting the dredge spoils to a remote, upland location for disposition. Anderson created a haul road to travel across the RV parcel that he owned for access to the north parcel. The haul road extended from the north bank of the north parcel through what is now the RV parcel and into a swamp area located in adjacent wetlands approximately 2 1/2 miles to the northeast.

Because the dredging operations required work in public waters, it was necessary for Anderson to obtain governmental permits. Anderson applied for permits from the United States Army Corps of Engineers (COE) and the Minnesota Department of Natural Resources (DNR) to perform the dredging maintenance work. In 1974, the DNR issued a permit authorizing the excavation, removal, and placement of the dredge spoils. In 1983, the DNR amended the permit to designate the location, and authorize the use of the haul road to perform the dredging operations. In so doing, the DNR's regional hydrologist wrote to Anderson, indicating that the prior permit was inadequate to properly maintain the channel and amended the permit to allow Anderson to extend the haul road. In 1990, the COE issued a permit to re-authorize the dredging operations, which identified and located the haul road as a means to perform the dredging operations.

Beginning in 1982 or 1983, Anderson dredged the marina bay and east channel

---

1. The marina property is presently owned by respondents, and the RV parcel is owned by appellant.

to remove the dredge spoils. The frequency of the dredging operations varied depending on the conditions resulting from wind and erosion; sometimes Anderson would dredge the channel two years in a row and other times two to three years would pass between dredgings. The haul road was used to gain access to the north-bank of the east channel to perform the dredging operations. Anderson indicated that at one point, he had dredged the east channel from the ice and removed the dredge spoils from the east, but such dredging was only possible "[i]f it's done at the right time of the year where the ice conditions are just right."

In October 1988, respondents entered into a three-year lease with Anderson to operate the marina. Two years later, in November 1990, respondents entered into an option to purchase the marina. In December 1990, respondents acquired by warranty deed the east parcel, and in June 1991, respondents acquired the marina parcel and the north parcel.

The deed for the marina parcel included a metes and bounds description of the marina, and referred to certain landmarks in describing its boundaries. The description of the northern border of the marina parcel, in pertinent part, reads:

> Beginning at the Northwest Corner of said Lot One (1) . . . thence South 88 degrees, 36 minutes, 51 seconds East 55.67 feet to an iron pipe monument; thence South 88 degrees, 36 minutes, 51 seconds East, 55.67 feet *to an iron pipe monument on the Westerly line of an existing steel wall* . . . thence South 88 degrees, 42 minutes, 45 seconds East *along said wall* 314.56 feet. . . .

(Emphasis added.) Anderson hired a surveying firm to perform a survey for the purpose of obtaining a legal description of the marina. The surveyor, who had 35 years of experience, was instructed by Anderson to include the sea wall in the legal description of the marina.

Respondents continued the maintenance of the marina, including dredging operations of the marina bay and east channel every year after their lease began in October 1988. Respondents dredged the marina bay and east channel, placed the dredge spoils on the north-bank of the north parcel, and transported the dredge spoils over the haul road to an upland area in accordance with the COE and DNR permits.

*The RV Property*

Following commencement of operations of the Warroad Marina, Anderson constructed an RV park located north of, and adjacent to, the marina. The RV parcel abuts wetlands to the north; the north parcel, east channel and other wetlands to the east; the marina bay to the south; and other residential property to the west. The haul road generally transects the RV parcel in an east-west direction and provides access to the north parcel, which is located generally to the east. In 2000, Anderson entered into a contract for deed to sell appellant the RV parcel. In July 2003, appellant paid off the contract for deed and received a warranty deed from Anderson.

The legal description in the RV parcel deed uses the identical language to describe its south boundary as is used to describe the northern boundary of the marina parcel. The legal descriptions for both parcels were prepared by the same surveyor, who did not prepare a new legal description, but used the information obtained from the previous marina parcel survey.

When appellant purchased the RV parcel, he believed that he had riparian rights to use the marina bay and the east channel to access Lake of the Woods. Prior to executing the contract for deed, appellant

had his surveyor locate the pins referenced in the legal description to the RV parcel; and appellant measured the boundary lines according to the metes and bounds description to the RV parcel. Based on his interpretation of the distances in the metes and bounds description, he concluded that the common property line of the RV parcel and the marina parcel was south of the sea wall, and extended into the water by approximately one foot.

*Litigation*

In 2002, appellant parked his boat in the marina bay along the sea wall south of the RV parcel. When respondents asked appellant to move his boat, he refused, claiming he had riparian rights.

In the spring of 2003, appellant attempted to block respondents' use of the haul road by having a sheriff stop them from moving equipment across the road. Respondents filed a complaint seeking an injunction to prohibit appellant from parking his boat in the marina bay, and for compensation of unpaid slip fees. Respondents also sought and obtained a temporary court order allowing them to continue using the haul road. Respondents amended their complaint asserting that they had easement rights to use the haul road. Appellant counterclaimed alleging, inter alia, that he had riparian rights to the marina and seeking to prevent respondents from continuing to use the haul road.

At the bench trial, both Anderson and respondents testified that it was the intention of the parties that respondents would acquire the sea wall as part of the acquisition of the marina parcel. The surveyor who drafted the deed testified that he intended that the description of the sea wall had priority over the courses and distances language in the legal description. Anderson testified that it was not his intent to convey the sea wall with the RV parcel because he believed the sea wall

was part of the marina parcel. But appellant testified that prior to entering the contract for deed, he told Anderson that his measurements established that the south boundary of the RV parcel extended into the waters of the marina bay. Appellant admitted that Anderson never stated that the boundary line was in the water.

Following trial, the district court ruled in favor of respondents, concluding that: (1) respondents have both a prescriptive easement and an easement by implication of necessity across the haul road running through the RV parcel; (2) respondents own the marina including the sea walls and embankments of the harbor and channel bordering the water; (3) appellant's RV parcel does not include the sea walls or embankments of the marina harbor or channel; and (4) appellant trespassed onto respondents' marina property by storing his boat in the marina water. The district court entered judgment in favor of respondents and against appellant for the trespass. This appeal follows.

## ISSUES

I. Did the district court err in concluding that appellant is not entitled to riparian rights?

II. Did the district court err in concluding that respondents are entitled to an easement by prescription and easement by necessity?

## ANALYSIS

██ On appeal, appellant contends that he has riparian rights and that respondents do not have an easement across his RV parcel. "The standard of review on appeal from a civil judgment is whether the evidence sustains the findings and whether the findings support the conclusions." *Minneapolis Pub. Hous. Auth. v. Greene*, 463 N.W.2d 558, 560 (Minn.App.

1990). This court will not reverse the district court merely because we view the evidence differently. *Rogers v. Moore,* 603 N.W.2d 650, 656 (Minn.1999). Rather, we will reverse the district court's findings of fact only if those findings are clearly erroneous or "manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Rogers,* 603 N.W.2d at 656 (quotation omitted). On purely legal issues, this court is not bound by and need not give deference to the district court's decision. *Modrow v. JP Foodservice, Inc.,* 656 N.W.2d 389, 393 (Minn.2003).

**I.**

■ Appellant contends that he has riparian rights to the marina bay because the courses and distances language in his deed create a southern boundary that extends into the marina bay. Respondents contend that appellant does not have riparian rights because the deed description refers to a fixed object, the sea wall, and the boundary to appellant's property only goes as far as the sea wall. Riparian rights are the rights to reasonably use the surface of waters abutting a parcel of real property. *Johnson v. Seifert,* 257 Minn. 159, 168–69, 100 N.W.2d 689, 696–97 (1960). A person does not own the water; rather, a person who owns a lakeshore or lakebed has the riparian right to use and enjoy the water. *Pratt v. State, Dep't of Natural Res.,* 309 N.W.2d 767, 772 (Minn. 1981).

■ Appellant's claim of riparian rights turns on whether his property ownership set forth in the deed extends to the waters of the marina bay. We discern the meaning of a writing, such as a deed, by looking at its language. *See In re Application of Mareck,* 257 Minn. 222, 226–27, 100 N.W.2d 758, 761–62 (Minn.1960). It is a long-settled rule that when identifying boundary lines, fixed and known monuments or objects called for in a legal description found in a deed prevail over given courses and distances; the order of application being first, to natural objects; second, to artificial marks; and, third, to courses and distances. *Yanish v. Tarbox,* 49 Minn. 268, 276–77, 51 N.W. 1051, 1051–52 (1892).

■ Here, the legal description in the deeds for the marina and RV parcels reference the property boundaries as running "to an iron pipe monument on the Westerly line of an existing steel wall" and "along said wall." We believe the only reasonable construction is that the boundary for each property is the westerly, or landward side of the sea wall. Because the sea wall does not extend into the water, appellant has no riparian rights. *Johnson,* 257 Minn. at 168–69, 100 N.W.2d at 696–97.

Appellant, citing *City of North Mankato v. Carlstrom,* 212 Minn. 32, 35, 2 N.W.2d 130, 133 (1942), argues that the boundary must be determined by following the metes and bounds description from the "iron pipe monument" referenced in the deed. In *Carlstrom,* the Minnesota Supreme Court held that a stake can constitute a permanent monument from which to properly commence a survey of legal boundaries. *Id.* at 134. But this case is distinguishable. In *Carlstrom,* the deed referenced a surveyor's stake marking the commencement point of the courses and distances description. *Id.* at 132. Here, the deed similarly refers to the "iron pipe monument" as a marker, but proceeds to describe the property as extending "along" the sea wall. The phrase "along said wall" modifies the metes and bounds description and takes precedence over the courses and distances described in the deed.

■ Our conclusion is also consistent with caselaw that requires us to consider

the intent of the grantor. "In the last analysis, the call adopted as the superior and controlling one should be that which is most consistent with the apparent intent of the grantor." *Dittrich v. Ubl,* 216 Minn. 396, 406, 13 N.W.2d 384, 390 (Minn.1944). Here, the intention of the grantor was that the sea wall be included as part of the marina. Because the grantor's intent was that the appellant's land should only extend as far as the sea wall, which did not abut the water, the district court did not err in concluding that appellant does not have riparian rights.

## II.

Appellant contends that the district court incorrectly concluded that his property is burdened by an easement for a haul road that benefits respondents' property for the purpose of conducting dredging operations of the marina bay and east channel. The district court concluded that respondents' property was benefited by an easement by prescription and necessity across the RV parcel.

*Easement by Prescription*

 Appellant contends that the facts are insufficient to support the district court's conclusion that a prescriptive easement existed because the requisite 15-year time requirement was not met. A prescriptive easement grants a right to use the property of another based on prior continuous use by a party. *See Romans v. Nadler,* 217 Minn. 174, 181, 14 N.W.2d 482, 486-87 (1944). To establish a prescriptive easement, the claimant must prove by clear and convincing evidence that the use of the property that is actual, open, continuous, exclusive, and hostile for the prescriptive period of 15 years. *Rogers,* 603 N.W.2d at 657. The 15-year period for prescriptive easements begins with the open, hostile, exclusive, and continuous use of another's property. *See id.* at 657.

Here, the district court found that respondents' use of the haul road commenced in October 1988, when they first leased the marina; respondents have continued to use the haul road until appellant blocked it in the spring of 2003. Because the 15-year time period was not met, we conclude that the requirements for a prescriptive easement have not been met.

*Easement by Necessity*

 Respondents contend that appellant's property should be burdened by an easement implied by necessity. An easement implied by necessity is created when "(1) [there is] a separation of title; (2) the use of which gives rise to the easement shall have been so long continued and apparent as to show that it was intended to be permanent; and (3) that the easement is necessary to the beneficial enjoyment of the land granted." *Romanchuk v. Plotkin,* 215 Minn. 156, 160-61, 9 N.W.2d 421, 424 (1943); *Rosendahl v. Nelson,* 408 N.W.2d 609, 611 (Minn.App.1987), *review denied* (Minn. Sept. 18, 1987). Except for the necessity requirement, these factors are only aids in determining whether an implied easement existed. *See Olson v. Mullen,* 244 Minn. 31, 40, 68 N.W.2d 640, 647 (1955).

 To be "necessary," an easement must be more than a mere convenience. *Clark v. Galaxy Apartments,* 427 N.W.2d 723, 727 (Minn.App.1988). But "[t]he easement need not have been indispensable to be necessary; rather, a reasonable necessity at the time of severance is sufficient." *Id.* "The party asserting the easement has the burden of proving necessity." *Id.* at 726. Obstacles such as topography, houses, trees, zoning ordinances, or the need for extensive paving, may create conditions where an easement is necessary. *See Rosendahl,* 408 N.W.2d at 611.

■ Appellant argues that the easement was unnecessary because the facts establish that the north bank of the east channel can be accessed across land presently owned by Anderson, the original grantor, or by water during the summer and by ice during the winter. But the question is not whether there are hypothetical alternative routes available; it is whether the haul road was reasonably necessary. *See Clark,* 427 N.W.2d at 727. The district court found that there is no other access to the north bank of the east channel for purposes of dredging and removing soil other than the haul road. While Anderson's testimony shows that it may be possible to dredge the marina bay and east channel without use of the haul road, it was only possible if "done at the right time of the year where the ice conditions are just right." The record does not show dredging from the ice was practicable or feasible every year. Both Anderson and respondent testified that the haul road was reasonably necessary to conduct the dredging operations. And the COE and amended DNR permits specifically authorize the haul road for dredging operations. Consequently, the district court did not err in concluding that the easement was necessary.

■ Appellant further argues that the easement was not known or apparent when he purchased the RV parcel in 2000. But we consider the use giving rise to an easement by implication of necessity at the time of the severance. *Niehaus v. City of Litchfield,* 529 N.W.2d 410, 412 (Minn.App. 1995); *see also Rosendahl,* 408 N.W.2d at 611 (Minn.App.1987); *Kleis v. Johnson,* 354 N.W.2d 609, 611 (Minn.App.1984) (noting that the court determines whether to grant an easement by necessity based on the conditions of the property at the time that the landlocked land was originally conveyed). Conditions subsequent to the time of severance cannot serve as the basis for creating an easement by implication of necessity. *Olson,* 244 Minn. at 41, 68 N.W.2d at 647.

Here, the severance in title did not occur in 2000 when appellant entered into a contract for deed to purchase the RV parcel. Instead, the severance of title occurred in 1991, when respondents purchased the marina and related parcels. The district court found that the haul road was used by the grantor beginning in 1982 and was apparent and obvious, and intended to be permanent at the time of severance. The record reasonably supports the findings of the district court.

■ Appellant argues that because the easement for the haul road provides no *reciprocal benefits* to appellant's property, i.e., no riparian rights, respondents are not entitled to an easement by necessity. Although an implied easement is an equitable doctrine, the elements for an easement by necessity do not include a reciprocal, separate benefit to the servient property. *See Romanchuk,* 215 Minn. at 160–61, 9 N.W.2d at 424 (elements of easement by necessity); *Lake George Park, L.L.C. v. IBM Mid Am. Employees Fed. Credit Union,* 576 N.W.2d 463, 466 (equitable doctrine). Therefore, appellant's argument lacks merit.

■ Appellant further argues that his property should not be burdened by an easement by necessity because respondents did not join adjacent property owners in this suit to establish whether alternative easements were practical. In *Nunnelee v. Schuna,* this court upheld the district court's denial of an easement by necessity where the claimant failed to join in the action parties that were "necessary for a fair and complete resolution of the plaintiffs' claim for an easement by necessity." 431 N.W.2d 144, 148 (Minn.App. 1988), *review denied* (Dec. 30, 1988). But

the facts here are distinguishable. In *Nunnelee*, the purported easement extended across another parcel in addition to the appellant's, and the owner of that parcel was not joined in the suit. *Id.* Here, there is no indication that the easement extends across parcels owned by parties other than appellant who are necessary for a fair and complete resolution of respondents' claim for an easement. Therefore, respondents did not need to join additional parties in order to prevail on their easement claim.

 Appellant argues that as a good-faith purchaser for value, his land should not be subject to an easement by necessity. Appellant suggests that respondents' failure to record the easement relieves his property from the easement. But notice is not a requirement for an easement implied by necessity. *See Romanchuk*, 215 Minn. at 160–61, 9 N.W.2d at 424. Implied easements, by definition, are not recorded. *See id.* Therefore, the district court did not err in granting an easement by necessity to respondents.

## DECISION

Because physical landmarks prevail over courses and distances in the legal description in a deed, appellant's property does not extend into the waters and, hence, appellant does not have riparian rights to the marina bay. Further, the record supports the district court's determination that respondents' property includes an easement by implication of necessity for purposes of using the haul road for its dredging operations of the marina bay and east channel in accordance with the COE and DNR permits.

**Affirmed in part and reversed in part.**