CHARLES A. STREET, Trustee,

*v.*

SANFORD B. FRENCH *et al.*

*Filed at Ottawa October 26, 1893.*

1. SPECIFIC PERFORMANCE—*by vendor against vendee—title must not be doubtful.* On bill by a vendor for the specific performance of a contract for the sale and conveyance of land, the complainant, to entitle himself to a decree, must show that the title which he offers to convey is good beyond·reasonable doubt, and one which will not expose the purchaser to litigation with parties not then before the court, and therefore not bound by its decision.

2. SAME—*what is a doubtful title.* A doubtful title, which a purchaser will not be compelled to accept, is not only a title upon which the court entertains doubt, but includes also a title which, although the court has a favorable opinion of it, yet may reasonably and fairly be questioned in the opinion of other competent persons.

3. If doubts as to the title arise upon a question connected with the general law, the court is to judge whether the general law on the point is or is not settled; and if it is not, or the doubts as to the title may be affected by extrinsic circumstances which neither the purchaser nor the court can satisfactorily investigate, specific performance will be denied.

4. SAME—*vendor's ability to make a good title.* The right of a vendor of land to a decree of specific performance by the purchaser will be determined in accordance with the condition of things existing at the time his bill is filed. If he is then not in a position to make a good deed the bill will properly be dismissed, notwithstanding the vendor may, after the filing of the bill, be able to make a good title.

5. CONVEYANCE—*when subject to trust.* Property was held in trust for the two sons of a testator, to be paid to them on their becoming twenty-five years old, and in the event they should die without issue before attaining that age, then the estate to be paid to the testator's two cousins. The trustee, finding himself insolvent, and having appropriated a large sum of the trust funds to his own use, in order to secure the beneficiaries in the trust, conveyed real estate to his brother, "in trust for A and B," the two sons, "heirs-at-law of," etc., and the deed also declared that "the conditions of the said trust are the same as set forth in the will" of the testator: *Held,* that the effect of the deed was to charge the land therein granted, and the proceeds thereof, when sold, with the same trust vested in the original trustee.

6. TRUST—*decree appointing successor in trust—parties.* A, by his will, vested a trust estate in B, one of his executors, the income of which was to be expended for purposes described and the principal was to be divided between C and D, the testator's two sons, provided they both attained the age of twenty-five years. The will then, among other things, directed that in case both sons died without issue before arriving at the age of twenty-five years, the estate should be distributed to two cousins of the testator. The trustee having used the trust funds, and proving insolvent, conveyed certain lots to his brother upon the same trusts created by the will, who refused to act. On bill by the two sons, while one was under age, against the trustee and his brother, the court appointed S. as trustee of the two sons. The two cousins having a contingent interest were not made parties or named as beneficiaries. S. made a contract for the sale of the lots: *Held,* that the title held by S. was not free from doubt, and that S. could not, on bill for specific performance, compel the purchaser to take such a title as he was able to make.

APPEAL from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

This was a bill in chancery, brought by Charles A. Street, trustee, etc., against Sanford B. French and others, for the specific performance of a contract for the sale and conveyance of land. A demurrer to the bill for want of equity having been sustained, a decree was entered dismissing the bill at the complainant's costs, and from that decree he now appeals to this court. The averments of the bill, so far as they need be stated, are as follows:

That about April 12, 1873, Charles J. Wyeth, of Cook county, died, leaving his last will and testament, by which he gave one-third of his estate to Julia E. Wyeth, his widow, and the remaining two-thirds to Nathan Corwith, and to his successor and successors in trust, for the uses and purposes in the will set forth, viz., to take charge of, manage and control the estate, as in his judgment, or in that of his successor or successors, should seem most advantageous to those interested therein, and to collect and receive the rents, income, issues and profits, and out of the net income, to pay Julia E. Wyeth

$2000 per year, so long as she should remain the testator's widow, such annuity being in part for the support, maintenance and education of the testator's two children, Leonard J. Wyeth and Nathan C. Wyeth, for the period of ten years after his decease, after which such further sum might be allowed and paid by the trustee, his successor or successors, for the support, education and general advantage of the children, as to him or them should seem proper, until they should respectively attain the age of twenty-one years, when all obligation on the part of the testator's widow to contribute to their support should cease; but in case the widow should marry again, the annuity to her was to be discontinued, and the $2000, or such part thereof, or such additions thereto, as to the trustee, his successor, etc., should seem proper, should be expended under his or their direction, for the support, maintenance and education of the two children, until they should respectively arrive at the age of twenty-one years, provided the amount thus expended should in no case exceed one-half of the net income of the estate, and provided that when the children should respectively attain the age of twenty-one years, their annual allowance might be increased by the trustee, his successor, etc., to a sum not exceeding $5000 until the division of the estate, the residue of the income to be invested until such division.

That the will further provided that, in case both the children should be living when the older of them attained the age of twenty-five years, the trust estate with the accumulations be divided into two equal parts, and that one part be conveyed to the one attaining that age absolutely and for his sole and exclusive use and benefit, and in case the younger should attain that age, that then the remaining part be in like manner conveyed to him; that if after the division of the estate, and before the younger should become twenty-five years old, he should die, leaving no lawful issue, then the remaining part of the estate should be conveyed to the older, if then living;

that in case of the death of either before arriving at the age of twenty-five years, leaving the other surviving, and leaving no lawful issue, if the survivor should attain the age of twenty-five years, the whole estate be conveyed to the survivor on his attaining that age; that if either should die before arriving at the age of twenty-five leaving lawful issue, such issue should immediately be entitled to the share or interest in the trust estate to which the parent would have been entitled if he had lived to attain the age of twenty-five years, and that the trustee, his successor, etc., make conveyance thereof accordingly; that in case both children should die before arriving at that age, leaving no lawful issue, then, upon the decease of the survivor of them, the trustee, or his successor, etc., should, out of the trust estate, pay to the testator's cousin, Ellen Wyeth, of Baltimore, Maryland, if then living, the sum of $25,000, and should set apart and hold in trust for the testator's cousin, Harriet C. Rew, of Chicago, a like sum of $25,000, the interest, income and profits thereof to be paid to her during her natural life, and the principal, upon her decease, to be divided equally among her children surviving her; the residue of the trust estate to be held and managed by the trustee, his successor, etc., and the net rent, income, issues and profits thereof to be paid semi-annually to the testator's widow for life, in case she should not marry again, and upon her death or marriage, the portion then remaining in the hands of the trustee, his successor, etc., to be conveyed absolutely and in equal parts to the testator's cousins William N. Wyeth and Henry C. Wyeth, of Baltimore, Maryland, or in case of their death or the death of either of them, to their lawful heirs, the heirs of each taking the share that would have gone to them respectively, if living.

That the will nominated and appointed Nathan Corwith, of Chicago, and Henry Corwith and John E. Corwith, of Galena, Illinois, or the survivor or survivors of them, or such one or more of them as should qualify and act, executors, the neces-

sity of their giving bond for the faithful performance of the duties of their trust being waived, and power and authority was expressly given to the executor or executors to sell, and by proper instrument or otherwise, to convey any and all property, real and personal, of which the testator might die seized or possessed, at such time or times and upon such terms and conditions, as to him or them should seem proper, and receive the proceeds thereof for the benefit of the estate; that in case of the death of Nathan Corwith before the complete execution of the trust, Henry Corwith and John E. Corwith, or the survivor of them should be appointed his successor or successors in trust, and in case neither should be living, Nathan Corwith might appoint his successor by will.

The bill further alleges that, upon the death of Charles J. Wyeth, Nathan Corwith qualified and was appointed as sole executor of the estate, and that the estate was duly administered in court, and that he afterwards accepted the estate as trustee under the terms of the will, and continued to act as executor and trustee from the date of his original appointment until on or about October 10, 1888; that Julia E. Wyeth, after the death of her husband, intermarried with one Wilcox, and that her interest in the estate, and in the annuity provided by the will to be paid to her has long since ceased; that two-thirds of the estate was duly transferred to Nathan Corwith as trustee, and from the date of such transfer to October 10, 1888, was held and controlled or used by him, except so much of the income or interest thereof as was paid by him for the support and education of Leonard J. Wyeth and Nathan C. Wyeth; that the estate of Charles J. Wyeth consisted entirely of personal assets, he having left no real estate; that Nathan Corwith received these assets and used them as his own, allowing and paying interest on the same to the testator's two sons, until the month of October, 1888; that about October 10, 1888, Nathan Corwith became financially embarrassed and physically unable to longer manage the trust;

that he had used the moneys and assets of the estate in his business, and had not set them apart as a separate trust estate in any form; that at that date there was due the estate, as subsequently established by a decree of the Circuit Court of Cook county, upwards of $89,000.

That for the purpose of securing the estate, so far as, owing to his embarrassment he was able to do at the time, Nathan Corwith, his wife joining him therein, on the day last named, executed and delivered to John E. Corwith, "in trust for Leonard J. Wyeth and Nathan C. Wyeth, heirs of Charles J. Wyeth, deceased," a warranty deed, conveying certain lots of land in the city of Chicago, it being expressly declared in the deed, that "the conditions of said trust are the same as set forth in the will of Charles J. Wyeth, deceased;" that John E. Corwith, although accepting the trust, declined to act as trustee, and thereupon Leonard J. Wyeth, and Nathan C. Wyeth, the latter then being a minor and appearing by Julia E. Wilcox, his mother and next friend, filed their bill in chancery against Nathan Corwith and John E. Corwith, praying for the appointment of a new trustee under the will, in place and stead of Nathan Corwith and John E. Corwith; that in and by their bill they alleged the death of Charles J. Wyeth, testate, and assumed to set forth the provisions of his will, but in stating the provisions relating to the final disposition to be made of the trust property, it merely alleged that "it was further in and by said will provided, that when your orator, Leonard J. Wyeth, should attain the age of twenty-five years, said trust estate should be divided into two equal parts, one to be paid to Leonard J. Wyeth absolutely and for his sole and exclusive benefit, and the remaining one-half to be conveyed to your orator Nathan C. Wyeth when he should arrive at the age of twenty-five years," it being further alleged that Leonard J. Wyeth was twenty-one years of age October 15, 1888, and Nathan C. Wyeth eighteen years of age April 20, 1888; but no mention whatever was made in the bill of those clauses of the

will providing for the disposition to be made of the trust estate in case of the death of either or both of these beneficiaries before arriving at the age of twenty-five years, or of the bequests to the testator's cousins, contingent upon the death of both his sons without lawful issue before arriving at the age of twenty-five years, their bill also alleging that the complainants therein were the sole owners and beneficiaries of the estate under the will, although a copy of the will seems to have been appended to the bill as an exhibit.

That the bill for the appointment of a new trustee set up the conveyance from Nathan Corwith to John E. Corwith, and alleged that Nathan Corwith, on account of ill health, was unable longer to act as trustee, and that John E. Corwith declined to act, and that there was no provision in the will for the appointment of a successor in trust during the lifetime of Nathan Corwith; that the bill prayed for the appointment of a new trustee, and for an order requiring Nathan Corwith and John E. Corwith to join in any instrument of conveyance necessary to convey to such new trustee the trust estate.

The present bill further alleges that, upon the bill thus filed, a decree was entered October 15, 1888, finding the facts as alleged, and appointing Charles A. Street, the present complainant, "trustee of the said estate of the complainants herein, and the property, real and personal, things in action, debts, equitable interests and other effects of the complainants Leonard J. Wyeth and Nathan C. Wyeth, and which belong to or were held in trust for them at the time of the commencement of this suit, or in which they had any beneficial interest whatever;" and ordering Nathan Corwith and John E. Corwith to assign, transfer and deliver over to the new trustee thus appointed all such property, real and personal, things in action, equitable interests and other effects and trust property, and deliver to him in like manner, all bills, notes, contracts, books of account and other evidences relating thereto, and the new trustee was authorized to make leases of the real

estate held by him as trustee, no lease to extend beyond the time Leonard J. Wyeth should arrive at the age of twenty-five years.

It is further alleged that, in pursuance of this decree, John E. Corwith, on the 10th day of November, 1888, conveyed the property previously conveyed to him by Nathan Corwith, to Charles A. Street; that at the time of this conveyance, a part of the property, viz., lot 1, in Kreigh's subdivision, etc., was subject to a contract between Nathan Corwith and Josiah L. Hathaway, dated April 22, 1884, in and by which Corwith, for a valuable consideration, had given to Hathaway an option to purchase the lot at any time prior to April 30, 1889, for $40,000; that Hathaway had, within the time limited, elected to purchase and had tendered the purchase money, and that he thereupon filed his bill against Nathan Corwith, Leonard J. Wyeth, Nathan C. Wyeth and Charles A. Street, for a specific performance of the contract, upon which a decree was entered July 30, 1890, ordering the conveyance of the lot to Hathaway, upon payment of the stipulated consideration.

That in the same suit, the trustee, and Leonard J. Wyeth and Nathan C. Wyeth filed their cross-bill, making the Corwiths defendants, praying among other things, for an accounting, and that upon that cross-bill, the court found that Nathan Corwith was chargeable as trustee with the total sum, principal and interest, of $97,770.80 which was due from him to Charles A. Street, his successor in trust; that upon this sum, the sum of $42,974, principal and interest arising from the sale to Hathaway was to be credited, without prejudice to any lien against any other property held by Street as trustee, for the balance due him from Nathan Corwith or his estate; that afterwards, in pursuance of this decree, Street conveyed lot 1 to Hathaway, and received from him as principal and interest $42,974, and applied the same on the indebtedness of $97,770.80.

The bill further alleges that the only remaining property then held by Street to secure the balance of this indebtedness consists of lots 5 and 6, in the subdivision of lots 1 to 20, in block 2, in South Branch addition, etc., to the city of Chicago; that these lots are unimproved, and are what are commonly known as dock property, which the trustee was unable to rent because of the fact that Leonard J. Wyeth would arrive at the age of twenty-five October 15, 1892, and that Nathan C. Wyeth would arrive at the same age April 20, 1895, and for the further reason that the lots are useful only for manufacturing and dock purposes, and can not be leased except for a period of several years; that the only moneys, property or estate held by Street, as trustee, are the moneys derived from the sale to Hathaway and these two lots, and that he can realize only about $2400 a year from the money, and out of that he is obliged to pay about $700 per year on an average in taxes and assessments on the lots; that Nathan C. Wyeth is pursuing his studies and preparing himself for professional life, and although the complainant is directed, as trustee, to pay him out of the income of the estate, the sum of $2000 per year, and as much more as the complainant should deem proper, not exceeding $5000, and to pay Leonard J. Wyeth a like sum or sums, he is obliged to protect the real estate and pay taxes thereon before he can pay any moneys to the beneficiaries, and that he does not have to exceed $1800 per year of income from the property with which to meet the disbursements to these beneficiaries, as provided by the terms of the will, and that by reason of the smallness of the income from the estate, they have been obliged to borrow money for their support, maintenance and education, since the failure of Nathan Corwith.

That by reason of the condition of the real estate, and of the circumstances above set forth, the complainant has deemed it prudent to sell the remaining real estate and convert it into money for the uses and purposes of the trust and therefore

the complainant, on the 4th day of December, 1891, made and entered into an agreement in writing, with Sanford B. French, in and by which French agreed to purchase lots 5 and 6 above mentioned for $50,000, and the complainant agreed to sell them at that price, and convey them to French, by general deed as trustee, subject to an order of court permitting such sale, and also subject to certain taxes and assessments, the complainant to procure from Leonard J. Wyeth and Nathan C. Wyeth proper deeds; that on signing the agreement, French paid $2500 earnest money, the same to be applied upon the purchase when consummated, and also agreed to pay the further sum of $12,500 five days after the title had been examined and found good and accepted by him provided a good and sufficient general deed as trustee, conveying to him a good and merchantable title to the premises, subject to the foregoing provisions, should then be ready for delivery; that the balance of the purchase money was to be paid, $10,000 in one year, $10,000 in two years, and $15,000 in three years, with interest thereon at the rate of six per cent per annum, payable semi-annually, the same to be secured by the notes of French and a mortgage or trust deed of even date with the agreement, on the premises sold; that by the terms of the agreement, the complainant was to furnish a merchantable abstract of title, brought down to the date of the agreement, the purchaser or his attorney, within ten days after receiving the abstract, to deliver to the complainant a memorandum in writing, specifying in detail his objections to the title, if any, and it was provided that if material defects should be found in the title, and the same were not cured within sixty days, the contract should, at the purchaser's option, become absolutely null and void, and the purchase money be returned, notice of such election to be given the complainant; that in case the purchaser should fail to perform the contract promptly on his part, at the time and in the manner specified therein, the $2500 paid as earnest money should, at

the option of the complainant, be forfeited as liquidated dam-ages, time to be of the essence of the contract and of all its provisions; that it was further provided that the $2500 ear-nest money should be held by the Merchants' Loan and Trust Company of Chicago, for the benefit of the parties concerned.

That on the 4th day of December, 1891, in pursuance of this agreement, French deposited the $2500 with the Mer-chants' Loan and Trust Company, which was received and is now held by that company under the terms of the agreement; that the complainant procured and delivered to French a complete and merchantable abstract of title, and caused to be executed by himself, as trustee, and by Leonard J. Wyeth and Nathan C. Wyeth, both being unmarried, a good and sufficient general deed of the lots, conveying them, according to the terms of the agreement, to French, that instrument bearing even date with the agreement, and being duly signed, executed and acknowledged by all the grantors; that, on the 10th day of February, 1892, in pursuance of the agreement, the com-plainant filed his petition in the Circuit Court of Cook county setting forth the provisions of the agreement, and praying for leave of court, as such trustee, to sell and convey the lots; that upon that petition a decree was duly entered by the court, authorizing the complainant to make the sale and con-vey the premises to French upon the terms embodied in the contract, upon condition that the complainant, file a further bond as trustee, in the sum of $50,000, to be approved by the clerk of the court; that on the 11th day of February, 1892, he filed the required bond, which was approved.

That afterwards, on February 17, 1892, the complainant caused the deed duly executed as aforesaid, together with a certified copy of the order of court authorizing the sale, and a certificate of the clerk that the bond had been approved, to be tendered to French, and requested and demanded of him that he carry out the terms of the contract, and pay the bal-ance of the consideration money, and execute the notes and

deed of trust provided for therein; that Leonard J. Wyeth and Nathan C. Wyeth are both of age, and are the sole and only beneficiaries of the real estate held by the complainant as trustee, and that they have fully assented to the contract and sale, and were parties to the petition to the Circuit Court for leave to the complainant to make the sale, and were represented in that proceeding by counsel, and that both they and the complainant have at all times since the making of the agreement, been ready and willing to carry out its terms, and convey the property to French or any person he may represent, and that the purchase price to be paid to the complainant for the property is its fair value.

The bill further alleges that, after the making of the contract with French, the complainant was informed that French was acting merely as trustee for the Chicago Economic Fuel Gas Company, a corporation duly organized under the laws of the State of Illinois, and that the Gas Company was the real party in interest in the purchase of the lots, a fact which French has since admitted to be true; that after the execution of the agreement, and the deposit of the earnest money, the Gas Company conveyed its rights, franchises and property to the city of Chicago, or to some other corporation or person unknown to the complainant, whereby the Gas Company no longer needed or desired the lots in question, and the complainant believes that the company and French, its agent, refuse to carry out the agreement for that reason.

That owing to the absence of Nathan C. Wyeth, who at the time the agreement was made, was a resident of Paris, France, the complainant was unable to obtain the deed or order of court for the purpose of tendering or delivering the same, prior to February 17, 1892, but at the time of such tender and demand by the complainant, neither French nor the Gas Company had in any manner forfeited the agreement; that the complainant did in all respects comply with the terms of the agreement, and hoped that the defendants, French and

23—147 ILL.

the Gas Company, would on their part, fully perform its terms, and pay the money and execute the securities thereby provided, but complainant avers that French pretended and claimed that the complainant was unable to convey a good title to the premises; that he was merely a trustee without power to convey, and that notwithstanding the beneficiaries joined in the conveyance, no deed made by the complainant and the beneficiaries would be good, or would convey a good title to the lots, and that, because of these pretended objections, French refused to carry out the agreement, or to pay the money or execute the securities therein provided for; that the complainant is advised that these pretenses on the part of French were made at the dictation of the Gas Company, and were not in good faith, but were made for the purpose of avoiding the contract, and because the Gas Company had no use for the lots, after the sale of its interests to the city of Chicago.

The bill further alleges that the complainant has obtained from Nathan Corwith and his estate and legal representatives and grantees, all the equity of redemption and other legal and equitable rights in the premises conveved by him to John E. Corwith, and that no other person or persons beside the complainant and his beneficiaries have any right, title or interest in and to the lots agreed to be conveyed by the agreement; that the complainant is advised and believes that he has so treated and considered his title to the lots held by him, as security to be applied upon the judgment and decree due the complainant from Nathan Corwith and his estate; that neither the complainant nor the beneficiaries have at any time accepted title to the lots as a title in fee except for the purpose of converting the same into money to apply upon the indebtedness found by the accounting and decree; that the complainant is advised and believes that neither John E. Corwith nor the complainant, as trustee, had any right to accept the title to the lots as a part of the estate, but only as

security to hold and convey for the purposes of the estate; that the consideration price for the lots, $50,000, is not sufficient to pay the total amount of the indebtedness found by the accounting to be due and the complainant is advised and believes that he has full power and authority and can, by deed under the order of the court, convey a complete title to the lots in fee to French.

The bill makes French, the Gas Company and the Loan and Trust Company parties defendant, and prays that the contract with French be specifically enforced, and a general prayer for relief.

Messrs. MILLARD & BOYESEN, for the appellant.

Messrs. CAMPBELL & CUSTER, and Mr. JOSEPH A. GRIFFIN, for the appellees.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This being a bill by a vendor for the specific performance of a contract for the sale and conveyance of land, the complainant, to entitle himself to a decree, must show that the title which he offers to convey is good beyond a reasonable doubt, and one which will not expose the purchaser to litigation with parties not now before the court, and therefore not bound by its decision. A doubtful title which a purchaser will not be compelled to accept, is not only a title upon which the court entertains doubts, but includes also a title which although the court has a favorable opinion of it, yet may reasonably and fairly be questioned in the opinion of other competent persons; for the court has no means of binding the question as against adverse claimants, or of indemnifying the purchaser, if its own opinion in favor of the title should turn out not to be well founded; that if doubts as to the title arise upon a question connected with the general law, the court is to judge whether the general law on the point is or is not

settled; and if it is not, or if the doubts as to the title may be affected by extrinsic circumstances, which neither the purchaser nor the court can satisfactorily investigate, specific performance will be denied. *Parke* v. *Waddington*, 10 Hare, 1; *Mullings* v. *Trinder*, L. R. 10 Equity, 449. The leading authorities bearing upon this rule are cited in *Close* v. *Stuyvesant*, 132 Ill. 607, and the citations need not be repeated here.

It is urged that the title which the complainant proposes to convey, as the same is made to appear by the allegations of the bill, is substantially defective in this, that the decree by which the complainant was appointed successor in trust, and the conveyance made in pursuance of that decree, failed to vest in him a complete title to the land. Charles J. Wyeth died in 1873, and by the terms of his will, a trust estate was vested in Nathan Corwith, as trustee, the income of which was to be expended for certain purposes particularly described, and the principal was to be divided between the testator's two sons, Leonard J. Wyeth and Nathan C. Wyeth, provided they both arrived at the age of twenty-five years. Provisions were also inserted directing the distribution of the trust fund to be made in case of the death of either of the sons, with or without issue, before arriving at that age, and in case both died without issue before arriving at the age of twenty-five years, the estate was to be distributed, in part, to two cousins of the testator, the residue to be held in trust for the benefit of the widow during her life or widowhood, and thereafter to be divided between two other cousins of the testator.

Nathan Corwith having mingled the trust funds with his own, and having become insolvent, for the purpose of securing the beneficiaries under the will in respect to the trust estate, he conveyed to his brother, John E. Corwith, the lots in question, together with the lot since sold to Hathaway, "in trust for Leonard J. Wyeth and Nathan C. Wyeth, heirs at law of Charles J. Wyeth, deceased," and it was further ex-

pressly declared in the deed that, "the conditions of the said trust are the same as set forth in the will of Charles J. Wyeth, deceased." There can be no doubt, and indeed it is not questioned, that the effect of this deed was to charge the lots thus conveyed to John E. Corwith, or their proceeds when sold, with the same trusts under which Nathan Corwith held the trust estate vested in him by the will of Charles J. Wyeth. They, or their proceeds, like the original trust fund, were thereby conveyed in trust for distribution in precisely the same way, and to precisely the same distributees, so that, in case of the death of both the two sons without issue before reaching the age of twenty-five years, the cousins named in the will would have become the beneficiaries of the fund thus created, and would have been entitled to distribution thereof according to the terms of the will.

John E. Corwith having declined to execute the trust, a proceeding was instituted in the Circuit Court of Cook county, for the appointment of a successor in trust. Neither at that time, nor at the time of filing the bill in this case, had either of the two sons of the testator reached the age of twenty-five years. The parties and the only parties to that proceeding were Leonard J. Wyeth and Nathan C. Wyeth, complainants, the latter being then a minor and appearing by his next friend, and Nathan Corwith and John E. Corwith, defendants. The bill alleged that the estate held in trust had all descended, by the terms of the will, to the two complainants, and that they were the sole owners and beneficiaries thereof, and although the will was appended to the bill as an exhibit, no mention was otherwise made of the rights or interests of those who were named in the will as beneficiaries in the event of the death of both the sons without issue before arriving at the age of twenty-five years.

The decree followed the bill, by ordering that Charles A. Street be appointed trustee of the estate of the complainants therein, and of the equitable interests and effects belonging to

them or held in trust for them at the commencement of the suit, or in which they had any beneficial interest whatever, and the Corwiths were ordered to assign, transfer and deliver to the trustee thus appointed, all such property real and personal.

It is difficult to see how the contingent rights of the testator's cousins were in any way affected by these proceedings. Their rights were not presented by the bill for ajudication, and they were not made parties, or if they can be treated as being before the court by representation, the decree does not attempt to make any disposition of them. Street was appointed trustee of the equitable interests of the two sons in the trust fund, and that seems to be the extent of the trusteeship. The decree does not in terms appoint him the successor in trust of the trustee appointed by the will, but only trustee of such interests in the trust as were vested in the sons. The impression in the minds of both the parties and the court seems to have been, that the equitable rights of the two sons were all that were to be regarded, and as a consequence, the contingent rights of other possible beneficiaries were wholly ignored.

We are of the opinion that the peculiar form of the bill and decree in the proceeding under which Street was appointed trustee was such as to cast a reasonable doubt upon the sufficiency of the title which he was then able to convey. At the time the contract now sought to be enforced was, by its terms, to be performed, and at the time the bill in this case was filed, neither of the testator's two sons had reached the age of twenty-five years, and both were unmarried. There was then a possibility that they might both die without issue before reaching that age, and in that event, there was strong reason to apprehend that the title conveyed by Street would have failed. This was a risk which the purchaser was not called upon to take upon himself. He would at least have run the risk of doubtful litigation with those who, in that event, would have become the beneficiaries of the entire fund, and whose

rights were not affected by the proceeding to appoint the complainant to the position of trustee.

It may be that now, since one of the sons has reached the age of twenty-five years, and the possibility of the testator's cousins ever becoming entitled as beneficiaries having thereby become extinguished, the title which Street holds has become relieved of the defect formerly existing, but that fact can not affect the decision of this case. The right of Street to a decree of specific performance must be determined in accordance with the condition of things existing at the time the bill was filed, and at that time, in our opinion, Street was not able to convey a title which was free from reasonable doubt, or which would not expose the purchaser to substantial litigation.

Our conclusion is, that the decree of the Circuit Court is correct, and it will be affirmed.

*Decree affirmed.*