Mandus OLSON, d.b.a. Northstar Supply Company, Respondent,

v.

Robert RUGLOSKI, Defendant,

and

STATE AUTOMOBILE AND CASUALTY UNDERWRITERS, Appellant,

and

Robert Rugloski, Defendant,

v.

Daniel M. ROOKE et al., Defendants.

No. 48498.

Supreme Court of Minnesota.

March 23, 1979.

Robert L. Hoppe, Minneapolis, for appellant.

Jardine, Logan & O'Brien and Eugene J. Flick, St. Paul, for respondent.

Heard before KELLY, WAHL and STONE, JJ., and considered and decided by the court en banc.

WAHL, Justice.

Defendant State Automobile and Casualty Underwriters appeals from a judgment of the Ramsey County District Court awarding plaintiff $35,000 punitive damages and $7,500 compensatory damages for defendant's wilful, wanton, and malicious refusal to pay insurance proceeds. We affirm in part and reverse in part.

Plaintiff, Mandus Olson, operates a trucking company and has insured his trucks with defendant State Automobile and Casualty Underwriters since 1969. In 1975, Olson was informed that State Automobile and Casualty Underwriters was leaving the state and that he would have to find other insurance. Olson finally contacted defendant Rooke, an agent for Brandow, Howard, Kohler and Rosenbloom, Inc., who handled other insurance for Olson. Rooke discovered that, although State Automobile and Casualty Underwriters was moving its cor-

porate headquarters to Iowa, it would continue to write insurance in Minnesota.

Olson desired to continue his truck insurance with State Automobile and Casualty Underwriters and requested Rooke to prepare an application for the same coverage he currently carried. The extent of that coverage was uncertain, because Olson did not have a copy of the current policy (1974–75). He gave Rooke a copy of his 1973–74 policy, and Rooke prepared the application based on that policy. Rooke gave the application to defendant Rugloski, an agent for State Automobile and Casualty Underwriters, to submit and the company issued a policy insuring each of Olson's trucks for $5,000 against loss by fire. When Olson received the policy, he informed Rooke that he wanted the coverage raised to $10,000 per truck. Rooke relayed this message to Rugloski, but the coverage was never altered.

On December 24, 1975, the two insured trucks were totally destroyed by fire. On December 31, 1975, Mr. Kaiser, a claims representative for State Automobile and Casualty Underwriters, inspected the damage and determined that each of the trucks was damaged in excess of $12,000. Within the first seven or eight days of January 1976, Mr. Kaiser offered Olson $5,000 per truck and requested that he sign a policyholder's release. Olson refused to do so, because he claimed he had $10,000 coverage on each truck. On February 6, 1976, State Automobile and Casualty Underwriters wrote to Olson again, offering to pay the $5,000 per truck in exchange for a release. Olson again refused to sign the release.

Olson then engaged an attorney who contacted State Automobile and Casualty Underwriters about March 1, 1976, attempting to collect the insurance proceeds. Mr. Mason, branch claims manager, agreed to pay the $5,000 per truck which was undisputed in return for a partial release. Olson's attorney drafted such a release and sent it to State Automobile and Casualty Underwriters in April 1976. The company claimed the release was not acceptable but did nothing to modify it. In fact, Mr. Mason told Ol-

son's attorney in May 1976 that the company would not pay the undisputed amount.

In June 1976, Olson filed a motion in Ramsey County District Court to require the insurer to pay the undisputed amount. The release was then modified and signed, and Olson received $10,000 in July 1976.

After the fire, Olson estimated it would cost approximately $13,000 per truck to restore them. He still owed $5,000 on one truck and $6,800 on the other. In March 1976, he sold both trucks as salvage for $3,500 per truck. Olson purchased two trucks to replace those lost in the fire—one in January 1976 for $15,000, and one in April 1976 for $4,500. He had to make extensive repairs to the truck bought in January. He also rented a truck for 15 days in January 1976.

Olson sued both insurance agents and State Automobile and Casualty Underwriters for the damages he sustained because the insurance coverage was not raised to $10,000 and because payment of the undisputed amount was delayed until July 1976. The trial court found both agents liable for the failure to raise the insurance coverage. It found the insurer not liable for the increased coverage but awarded Olson damages against the insurer, because it found that the insurer "willfully, wantonly, and maliciously refused to * * * Olson the sum of $10,000.00 due under the insurance policy issued September 1, 1975".

The sole issue in this appeal is whether the insurer is liable for any damages caused by the delay in paying the undisputed proceeds of the insurance policy.

■ An insurance policy is a contract, the terms of which determine the rights and obligations of the contracting parties. *Employers Mutual Cas. Co. v. Kangas*, 310 Minn. 171, 174, 245 N.W.2d 873, 875 (1976); *Farkas v. Hartford Accident and Indemnity Co.*, 285 Minn. 324, 327, 173 N.W.2d 21, 24 (1969). The insurer is obligated to pay when the insured suffers a loss covered by the policy. When the insurer refuses to pay or unreasonably delays payment of an undisputed amount, it breaches the contract

and is liable for the loss that naturally and proximately flows from the breach. See, *Frank v. Jansen,* 303 Minn. 86, 94, 226 N.W.2d 739, 745 (1975).

Lost profits may be recovered if they are a natural and proximate result of the breach and are proved with reasonable, although not absolute, certainty. See, *Northern Petrochemical Co. v. Thorsen & Thorshov, Inc.,* 297 Minn. 118, 125, 211 N.W.2d 159, 166 (1973). To the extent that our opinion in *Independent Grocery Co. v. Sun Insurance Co.,* 146 Minn. 214, 178 N.W. 582 (1920), holds that an insured is limited to recovering only the amount of the policy plus interest, it is hereby overruled.

■■ In the present case we recognize that there was a valid dispute between the insured and the insurer over the increased coverage. There was, however, no dispute that the policy provided coverage of $5,000 per truck and that the damage to each truck clearly exceeded $10,000. Under the terms of the insurance policy the insurer had 30 days after proof of loss was filed and the amount of the loss determined in which to pay the insured. The only reason the insurer refused to pay the undisputed amount in this case was because the insured refused to sign a release. A release documents a compromise and settlement or accord and satisfaction of a disputed claim. But payment of an admitted liability does not provide consideration for accord and satisfaction or compromise and settlement. See, *Cut Price Super Markets v. Kingpin Foods, Inc.,* 256 Minn. 339, 98 N.W.2d 257 (1959); *Tupper v. Massachusetts Bonding & Ins. Co.,* 156 Minn. 65, 194 N.W. 99 (1923); *Scott v. Missouri Ins. Co.,* 361 Mo. 51, 233 S.W.2d 660 (1950); *Irelan v. Standard Mutual Ass'n.,* 379 S.W.2d 815 (Mo.Ct.App. 1964); *Baker v. All States Life Ins. Co.,* 58 Ohio Abs. 366, 46 Ohio Op. 308, 96 N.E.2d 787 (1950); 3 Appelman, Insurance Law and Practice, § 1691, 6 Appelman, Insurance Law and Practice, § 4009. Because neither party disputed that the insurer owed the insured $5,000 per truck, the insurer was not entitled to a release. By refusing to pay the undisputed amount unless the insured signed a release, the insurer breached the contract and, thus, is liable for all damages that are a natural and proximate result of the breach.

■ At trial, the insured introduced testimony of some of his customers plus his tax returns from prior years to prove his lost profits. The trial court carefully examined all of the evidence to reach a realistic award. We, therefore, affirm the trial court's award of $7,500 compensatory damages.

■■ We reverse the trial court's award of $35,000 punitive damages. Punitive damages are not recoverable for breach of contract except in exceptional cases where the breach of contract constitutes or is accompanied by an independent, wilful tort. See, *Moore v. Blomquist,* 256 N.W.2d 518 (Minn.1977); *Wild v. Rarig,* 302 Minn. 419, 234 N.W.2d 775 (1975), appeal dismissed, 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976); *Johnson v. Radde,* 293 Minn. 409, 196 N.W.2d 478 (1972); *Swanson v. First National Bank,* 185 Minn. 89, 239 N.W. 900 (1931); *Independent Grocery Co. v. Sun Insurance Co., supra; Beaulieu v. Great Northern Ry. Co.,* 103 Minn. 47, 114 N.W. 353 (1907); *Francis v. Western Union Telegraph Co.,* 58 Minn. 252, 59 N.W. 1078 (1894).

Because there is insufficient evidence of fraud, oppression or malice to justify an award of punitive damages, we do not reach the question of whether there was such an independent tort.

Affirmed in part, reversed in part.

TODD, J., took no part in the consideration or decision of this case.