**MATTSON RIDGE, LLC, Respondent,**

v.

**CLEAR ROCK TITLE, LLP,
et al., Appellants.**

No. A10–1483.

Supreme Court of Minnesota.

Dec. 12, 2012.

John M. Koneck, Brian S. McCool, Grant D. Fairbairn, Fredrikson & Byron, P.A., Minneapolis, MN, for respondent.

Nell E. Mathews, Christopher R. Sullivan, Lindquist & Vennum P.L.L.P., Minneapolis, MN, for appellants.

Bradley N. Beisel, David J. Krco, Beisel & Dunlevy, P.A., Minneapolis, MN, for amici curiae Minnesota Land Title Association and American Land Title Association.

## OPINION

STRAS, Justice.

This case relates to a title insurer's obligations when a policyholder claims that title to a covered parcel of property is unmarketable and that the policyholder has suffered damages due to the unmarketability of the title. Respondent Mattson Ridge, LLC, purchased the property at issue and obtained a title insurance policy from appellant Ticor Title Insurance Co. An ambiguity in the legal description of the property, however, prevented Mattson Ridge from reselling the property to a third party. Mattson Ridge thereafter filed an action seeking a declaration of Ticor's obligations under the policy and alleging breach of contract against Ticor. The district court concluded that Ticor was liable after finding that title to the property in question was unmarketable, but the court limited Mattson Ridge's recovery to the face value of the policy. The court of appeals affirmed the finding of liability, but held that Mattson Ridge was entitled to recovery in excess of the policy limit. We affirm in part, reverse in part, and remand for reinstatement of the district court's award of damages.

### I.

Mattson Ridge, LLC, is a real estate firm formed in 2004 to take advantage of economic growth in the Chisago Lakes area. In March 2005, Mattson Ridge entered into an agreement with Harold and Judith Shoberg to purchase approximately 64 acres of undeveloped farmland near Chisago City ("the Property") for $1,286,000. After Mattson Ridge closed on the Property in September 2005, it secured a title insurance policy from Clear Rock Title, LLP, which acted as issuing agent for Ticor Title Insurance Co. (collectively "Ticor"). The policy provided, among other things, that Ticor would insure "against loss or damage, not exceeding the amount of insurance stated in Schedule A, sustained or incurred by the insured by reason of ... [u]nmarketability of the title." The amount of insurance stated in Schedule A was the same amount Mattson Ridge paid for the Property: $1,286,000.

Around the time Mattson Ridge closed on the Property, the area real estate market began to peak. As a result, Mattson Ridge received several offers from developers to buy the Property at prices ranging from $2,600,000 to $2,900,000. On October 21, 2005, Mattson Ridge entered into a purchase agreement with Thompson Builders and Contractors ("Thompson") to sell the Property for $2,900,000. The purchase agreement required Mattson Ridge to convey marketable title by the closing date of May 30, 2006.

Shortly after signing the purchase agreement, Thompson began preparing the Property for development, including ordering an environmental review, hiring site engineers to create grading and lighting plans, and seeking plat approval from Chisago City. Problems with the title to the Property, however, prevented Thompson from completing the transaction. The agent from whom Thompson sought title insurance, Commercial Partners Title, LLC, informed Thompson that the legal description of the Property "appear[ed] ambiguous and should be surveyed and reformed." Commercial Partners refused to issue Thompson a title insurance policy unless Mattson Ridge cured the ambiguity.

Without title insurance, Thompson was unable to receive final approval of its plat from Chisago City or secure financing for its purchase.

Commercial Partners' title objection related to the legal description of the Property, which described the parcel as follows:

The North 1/2 of the Northwest 1/4 of Section 25, Township 34, Range 21, Chisago County, Minnesota, excepting however, two acres, more or less, in the Northwest corner of the Northwest 1/4 of Northwest 1/4 of said Section 25, described as follows: Commencing at the Northwest corner of said Section 25; thence South 30 rods to the intersection of road leading from the county road at or near Charles Magnuson's place in Sunrise City; thence along the center of the road to where said road crosses the section line; thence along the North line of said Section, 24 rods to the Northwest corner of said Northwest 1/4 of Northwest 1/4 or to the place of beginning. Excepting therefrom, all that part of the Northwest 1/4 of Northwest 1/4, Section 25, Township 34, Range 21, Chisago County, Minnesota, which lies Southerly of State Aid Road No. 19 and Easterly of State Aid Road No. 80.

The portion of the description to which Commercial Partners objected was the call of "thence South 30 rods to the intersection of road leading from the county road at or near Charles Magnuson's place in Sunrise City." Mattson Ridge agreed that the legal description's reference to "Charles Magnuson's place" rendered the call ambiguous because it was unclear who Charles Magnuson was, where his "place" was located, and whether he would remain at that place. An attorney representing both Thompson and Mattson Ridge also expressed concern about the ambiguity in the legal description. In addition, before issuing its title policy to Mattson Ridge, an agent from Ticor identified the Property's legal description as "vague."

Mattson Ridge sought assistance from Ticor in correcting the ambiguity in the Property's title, but Ticor denied coverage under the policy. Mattson Ridge then moved forward on its own, hiring a surveyor to draft a new legal description and instituting an action in Chisago County District Court to register title to the Property.[1] The court entered an order and decree of registration on July 16, 2007, declaring Mattson Ridge the owner of the Property and providing a new legal description that removed the reference to "Charles Magnuson's place" and instead relied on current street names to set the boundaries of the Property. Thompson then obtained a new, unconditional title commitment from Commercial Partners and prepared to close on the Property. By that time, however, the declining real estate market prevented Thompson from obtaining acceptable financing. After several extensions and modifications of the purchase agreement, Thompson cancelled the purchase agreement because it could not secure financing. Mattson Ridge failed to find a new buyer for the Property.

---

1. In Minnesota, a parcel of land can be either "Torrens" or "abstract." Ownership of abstract property depends upon the traditional process of researching the chain of title to determine who has the superior claim of right to the property. *See Hersh Props., LLC v. McDonald's Corp.,* 588 N.W.2d 728, 733 (Minn.1999) (*describing the abstract system*). Under the Torrens system, by contrast, an owner can seek to "register" the property by instituting a court action. *See generally* Minn. Stat. ch. 508 (2012). A registration action allows the owner to cure any defects in the title, to clarify the boundary lines of the property, and to establish conclusively its title to the property in question. *See* Minn.Stat. §§ 508.06, 508.10, 508.22 (2012).

Mattson Ridge sued Ticor, seeking a declaration of Ticor's coverage obligations under the policy and alleging breach of contract. The district court granted summary judgment to Mattson Ridge on the question of liability, concluding that title to the Property was unmarketable and that Ticor therefore breached its duty to defend and indemnify Mattson Ridge with respect to the ambiguous title description.

The district court held a trial on damages. At trial, Mattson Ridge elicited testimony that Thompson was prepared to move forward and close on the Property at the agreed—upon purchase price of $2,900,000 if the title to the Property had been marketable. Mattson Ridge's appraiser, Robert Strachota—whose testimony the district court found "credible and helpful"—testified that the purchase price for the Property was consistent with its fair market value. According to Strachota, however, the title defect decreased the value of the Property to between $290,000 and $725,000. Moreover, by the time Mattson Ridge remedied the title defect on July 15, 2007, Strachota estimated that the Property had decreased in value to approximately $1,300,000. The parties stipulated at trial that Ticor could not have completed title registration any sooner than Mattson Ridge. The parties also stipulated that Mattson Ridge's expenditure of $11,169 in attorney fees and costs to register the title was a reasonable amount.

The district court awarded Mattson Ridge $1,297,169 in damages. In doing so, the court accepted the purchase price of $2,900,000 as the fair market value of the Property with marketable title and Strachota's estimate of $290,000 to $725,000 as the value of the Property subject to the defect. The difference in value between the value of the Property with and without marketable title, the court calculated, was

between $2,175,000 and $2,610,000. However, because the title insurance policy limited Ticor's liability to the face value of the policy, the court capped Mattson Ridge's recovery at the policy limit of $1,286,000 and awarded an additional $11,169 to account for Mattson Ridge's out-of-pocket expenses in registering the Property.

The court of appeals affirmed the finding of liability, agreeing that the legal description's ambiguous reference to "Charles Magnuson's place" made the title unmarketable. *See Mattson Ridge, LLC v. Clear Rock Title, LLP*, 2011 WL 2175832, at \*3–4 (Minn.App. June 6, 2011). But the court reversed the award of damages, concluding that Ticor's breach of the insurance contract rendered Ticor liable for all losses proximately caused by its breach—including amounts in excess of the policy limit. *Id.* at \*6. We granted Ticor's petition for further review.

## II.

■■■ The first question presented in this case is whether the district court erred by granting partial summary judgment to Mattson Ridge on its claim that Ticor breached the title insurance policy by failing to defend and indemnify Mattson Ridge when an objection was raised to the legal description of the Property. We review a district court's grant of summary judgment de novo to determine (1) whether there is a genuine issue of material fact precluding summary judgment and (2) whether the district court correctly applied the law. *Savela v. City of Duluth*, 806 N.W.2d 793, 796 (Minn.2011). In this case, the material facts are undisputed.

Mattson Ridge's title insurance policy with Ticor defines "unmarketability of title" as "an alleged or apparent matter affecting the title to the land ... which would entitle a purchaser ... to be re-

leased from the obligation to purchase by virtue of a contractual condition requiring the delivery of marketable title." In other words, the policy defines unmarketability of title as an alleged or apparent defect in the title of the insured property that would be *legally* sufficient to justify a buyer's cancellation of a contract to purchase the property—an inquiry that turns on the definition of "marketable title" from case law.

The phrase "marketable title" has a "well-defined and well-understood meaning." *City of N. Mankato v. Carlstrom*, 212 Minn. 32, 36, 2 N.W.2d 130, 133 (1942) (citation omitted) (internal quotation marks omitted). A marketable title is " 'one that is free from reasonable doubt; one that a prudent person, with full knowledge of all the facts, would be willing to accept.' " *Id.* at 36, 2 N.W.2d at 133 (quoting *Hubachek v. Maxbass Sec. Bank*, 117 Minn. 163, 169, 134 N.W. 640, 642 (1912)). The primary purpose of requiring marketable title is to protect the purchaser of real property from having to undertake the burden of litigation to remove or defend against real *or* apparent defects in the title. *See Carlstrom*, 212 Minn. at 36, 2 N.W.2d at 133; *Hubachek*, 117 Minn. at 168, 134 N.W. at 642. The requirement of marketable title thus protects purchasers of real property from actual and apparent defects in the title—the latter of which occurs when title is "so clouded by apparent defects . . . that prudent men, knowing the facts, would hesitate to take it." *Howe v. Coates*, 97 Minn. 385, 400, 107 N.W. 397, 403 (1906) (citation omitted) (internal quotation marks omitted); *see also Target Stores, Inc. v. Twin Plaza Co.*, 277 Minn. 481, 497, 153 N.W.2d 832, 842–43 (1967) (concluding that title was unmarketable because there was "serious doubt" as to whether unrecorded prior lease agreements created an adverse interest in the property, even if the alleged defects did not actually affect the title to the real property).

We evaluate the marketability of title from the viewpoint of the putative purchaser, not from the position of the seller or a third party. *See Carlstrom*, 212 Minn. at 36, 2 N.W.2d at 133. However, in determining whether title is free from "reasonable doubt," we consider the opinions of "other competent persons," including title agents and real estate attorneys. *See Howe*, 97 Minn. at 398, 107 N.W. at 402 (quoting *Street v. French*, 147 Ill. 342, 355, 35 N.E. 814, 819 (1893)) (internal quotation marks omitted); *see also Tri–State Hotel Co. v. Sphinx Inv. Co.*, 212 Kan. 234, 510 P.2d 1223, 1234 (1973) (holding that a court may consider the fact that "a competent attorney has rendered an opinion" on whether title is marketable); *Walker v. Gillman*, 127 Mich. 269, 86 N.W. 830, 831 (1901) (holding that the good-faith opinion of purchaser's counsel that title was not marketable justified her refusal to perform on a contract for the sale of land). In *Howe*, for example, we considered the opinion of the prospective purchaser's counsel that title to the real property was objectionable. 97 Minn. at 400–01, 107 N.W. at 402. We further noted the conflicting views of two "able lawyers" selected to arbitrate the validity of the seller's title. *Id.* at 400, 107 N.W. at 403. After considering the opinions of the various experts, we ultimately concluded that the title in *Howe* was unmarketable based in part on the fact that "able lawyers who ha[d] no conceivable motive for reaching a biased opinion" had reached conflicting opinions on the adequacy of the title. *Id.*

Applying the standard for "marketable title" here, we conclude that the reference to "Charles Magnuson's place" in the Property's legal description rendered title to the Property unmarketable. Mattson

Ridge presented evidence that multiple experts expressed doubts about the adequacy of the title that Mattson Ridge agreed to convey to Thompson. For example, Commercial Partners—the title agent selected by Thompson to represent it in the transaction—refused to cover defects in the Property's legal description, stating that the description "appear[ed] ambiguous and [ought to] be surveyed and reformed." Thomas Miller, an attorney assisting both Thompson and Mattson Ridge, reached a similar conclusion, opining that the objection raised by Commercial Partners was "valid." In fact, Mattson Ridge even presented evidence that Ticor had previously found problems with the Property's legal description when it issued Mattson Ridge's title insurance policy; an agent of Ticor had characterized the Property's legal description as "vague" in a company document.

■ In contrast, Ticor did not present any expert evidence on summary judgment defending the adequacy of the Property's legal description. Even so, expert opinions do not receive conclusive weight in determining whether title to the property in question was marketable. *See id.* at 400, 107 N.W. at 404 ("The opinion of counsel that a title is bad or unmerchantable may or may not in itself be sufficient. . . ."). Rather, we must also evaluate whether the doubts expressed about the title were "reasonable." *Carlstrom,* 212 Minn. at 36, 2 N.W.2d at 133.

In this case, the doubts about the marketability of Mattson Ridge's title were reasonable. Prior to its reformation, the legal description of the Property referred to "the intersection of road leading from the county road at or near Charles Magnuson's place in Sunrise City." However, as the court of appeals recognized, the reference to Charles Magnuson's place in the description could refer to any number of locations, such as Magnuson's home or his business. *See The American Heritage Dictionary of the English Language* 1345 (5th ed.2011) (listing each of the above as alternate definitions of "place"). Indeed, Charles Magnuson also could have had more than one "place" located in Sunrise City. Therefore, even after researching and examining relevant records, the doubts expressed by experts about the adequacy of Mattson Ridge's title to the Property were reasonable because the reference in the Property's legal description to "Charles Magnuson's place" was ambiguous.

For these reasons, the district court correctly concluded "that a prudent person, with full knowledge of all the facts," *Carlstrom,* 212 Minn. at 36, 2 N.W.2d at 133, would be unwilling to accept title to the Property because the adequacy of the legal description was "debatable," *Howe,* 97 Minn. at 398, 107 N.W. at 403. The unmarketability of title to the Property, in turn, triggered Ticor's duty under the title insurance policy to defend and indemnify Mattson Ridge. When Ticor failed to do so, it breached its contractual duties under the policy. Accordingly, because the record lacks any genuine issue of material fact with respect to Ticor's liability for breach of its duties to defend and indemnify Mattson Ridge, we affirm the district court's grant of partial summary judgment to Mattson Ridge.

III.

The next question presented by this case is the proper measure of damages for Ticor's breach of the title insurance policy. The district court awarded Mattson Ridge the policy limit of $1,286,000 for its consequential damages, and an additional $11,169 for its attorney fees and costs in registering the Property. The court of appeals disagreed with the district court's

decision to limit Mattson Ridge's consequential damages to the face value of the policy, and instead awarded Mattson Ridge the full amount of its lost profits: $1,900,000.

To determine the proper measure of damages in this case, our analysis proceeds in two parts. First, we resolve the purely legal question of whether the title insurance policy caps Mattson Ridge's recovery of consequential damages to the face value of the policy. Second, we address the proper amount of damages to award Mattson Ridge in this case, including whether the policy permits Mattson Ridge to recover any of its lost profits.

### A.

▮▮▮ The first issue is whether the title insurance policy limits Mattson Ridge's consequential damages to the face value of the policy. The district court found, and neither party disputes, that the face value of the policy in this case is $1,286,000. Ordinarily, the terms of an insurance contract delineate the extent of an insurer's liability to the insured, which in this case would limit Mattson Ridge's recovery to $1,286,000. *See Reinsurance Ass'n of Minn. v. Hanks,* 539 N.W.2d 793, 797 (Minn.1995); *Emp'rs Mut. Cas. Co. v. Kangas,* 310 Minn. 171, 174, 245 N.W.2d 873, 875 (1976). But Mattson Ridge argues here that *Olson v. Rugloski,* 277 N.W.2d 385 (Minn.1979), supports an award of consequential damages in excess of the policy limit. We disagree.

In *Olson,* the insured sought to recover lost profits after its insurer failed to pay for the actual damages that the insured's trucks sustained in a fire. 277 N.W.2d at 387. The parties disagreed about the

maximum recovery per truck under the policy, but both parties agreed that the insured was entitled to a minimum award of $5,000 per truck. *Id.* at 388. The insurer nevertheless refused to pay any benefits to the insured, which caused the insured to sustain lost profits while the trucks were not in service. *Id.* In awarding consequential damages to the insured, we held that "[w]hen the insurer refuses to pay or unreasonably delays payment of an undisputed amount, it breaches the contract and is liable for the loss that naturally and proximately flows from the breach." *Id.* at 387–88.

For Mattson Ridge to recover in excess of the policy limit, as in *Olson,* it must prove that Ticor unreasonably delayed payment of an undisputed amount of benefits and that its lost profits were a natural and proximate consequence of Ticor's breach of the title insurance policy.[2] *See id.* In this case, Ticor breached the title insurance policy by failing to defend and indemnify Mattson Ridge. The parties stipulated at trial that Ticor could not have completed title registration any sooner than Mattson Ridge. Because of that stipulation, Ticor's failure to defend and indemnify Mattson Ridge by timely prosecuting an action to cure the defects in the legal description of the Property was not, and could not have been, the cause of Mattson Ridge's lost profits. To the contrary, the cancellation of the sale of the Property, and Mattson Ridge's lost profits from the cancellation, were the direct result of the preexisting defect in the Property's legal description.

▮▮▮ To the extent that Mattson Ridge argues that Ticor breached the title insur-

---

**2.** Although unnecessary to our decision here, we note that it appears that Ticor did not exhibit the type of "wilful, wanton, and malicious" behavior present in *Olson:* an unrea-

sonable failure to pay an undisputed amount of benefits to the insured. *See* 277 N.W.2d at 386–88.

ance policy once Thompson discovered a defect in the legal description of the Property, Mattson Ridge confuses the condition insured against—in this case, a defect in the title to the Property—with an insurer's contractual duties under the policy—to defend and indemnify the insured against the covered condition. Put differently, the mere fact that title was unmarketable was not a breach of the policy. A title insurer does not guarantee that the covered condition does not exist; the insurer promises only that it will fix the condition once it is discovered and that it will indemnify the insured if the insured suffers any damages as a result of the condition. *See Falmouth Nat'l Bank v. Ticor Title Ins. Co.,* 920 F.2d 1058, 1062 (1st Cir.1990); *Chicago Title Ins. Co. v. McDaniel,* 875 S.W.2d 310, 311 (Tex.1994). Thus, because the sale to Thompson would have been delayed, and eventually cancelled, regardless of whether Ticor breached the contract, Mattson Ridge's lost profits did not "naturally and proximately flow[ ] from" Ticor's breach of the title insurance policy. *See Olson,* 277 N.W.2d at 387–88.

We therefore conclude that the court of appeals erred by relying on *Olson* to award Mattson Ridge consequential damages in excess of the face value of the policy. The only loss that naturally and proximately flowed from Ticor's breach arose when Ticor failed to indemnify Mattson Ridge once title to the Property proved unmarketable. We now evaluate that loss to determine the appropriate measure of Mattson Ridge's damages under the title insurance policy.

### B.

■ The policy required Ticor to insure Mattson Ridge "against loss or damage, not exceeding the amount of insurance stated in Schedule A, sustained or incurred ... by reason of ... [u]nmarket-

ability of the title." Ticor's obligation to insure Mattson Ridge against unmarketability of title was subject, however, to several limitations delineated in the policy. In section 7, for example, the policy states as follows:

### 7. DETERMINATION. EXTENT OF LIABILITY AND COINSURANCE

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.

(a) The liability of the Company under this policy shall not exceed the least of:

(i) The Amount of Insurance stated in Schedule A; or

(ii) the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy.

Section 9 contains an additional limitation on Ticor's liability:

### 9. LIMITATION OF LIABILITY

(a) If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or cures the claim of unmarketability of title, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

Under the foregoing two sections of the policy, Ticor had two options once Thompson discovered a defect in the Property's legal description. Ticor's first option was to "cure[ ] the claim of unmarketability of

title ... in a reasonably diligent manner," in which case it would not have been liable for "any actual monetary loss or damage sustained or incurred" as a result of the unmarketable title. Ticor's second option was to refuse the claim submitted by Mattson Ridge, in which case its liability from its failure to defend and indemnify Mattson Ridge would be limited to the lesser of: (1) $1,286,000; or (2) the difference in value of the Property as insured and its value without the defect in title.[3]

 Ticor selected the second option by declining to cure the title defect in a reasonably diligent manner. As a result, the policy required Ticor to indemnify Mattson Ridge for its "actual monetary loss or damage sustained or incurred" because of unmarketability of title—an amount that could not exceed the monetary caps on Ticor's liability in section 7 of the policy. The phrase "actual monetary loss or damage" is not defined by the policy. When terms or phrases in an insurance policy are not specifically defined, "they must be given their plain, ordinary, or popular meaning." *Smith v. St. Paul Fire & Marine Ins. Co.*, 353 N.W.2d 130, 132 (Minn.1984).

For insurance purposes, we have defined "loss" as " 'the amount of an insured's final detriment by death or damage [for which] the insurer becomes liable.' " *Quade v. Secura Ins.*, 814 N.W.2d 703, 706 (Minn.2012) (emphasis omitted) (quoting *Merriam–Webster's Collegiate Dictionary* 687 (10th ed.2001)). Similarly, the plain and ordinary meaning of the term "damage" is the "[d]estruction or a loss in value, usefulness, or ability resulting from an action or event." *American Heritage Dictionary of the English Language* 457; *see also Webster's Third New International Dictionary*

571 (2002) (defining "damage" as "the estimated reparation in money for detriment or injury sustained: compensation or satisfaction imposed by law for a wrong or injury caused by a violation of a legal right."). Finally, the term "actual" is defined as "[e]xisting in reality and not potential, possible, simulated, or false." *The American Heritage Dictionary of the English Language* 18; *see also Webster's Third New International Dictionary* 22 (defining "actual" as "existing in fact or reality ... contrasted with *ideal* and *hypothetical* "). Reading those terms together, the phrase "actual monetary loss or damage" refers to a real, rather than speculative or potential, monetary loss in value resulting from an action or event. Section 7 of the policy, in turn, describes the pertinent action or event as the matter "insured against by" the policy—here, the unmarketability of title.

Applying the plain and ordinary meaning of the phrase "actual monetary loss or damage," the calculation of Mattson Ridge's recovery is relatively straightforward. Following trial, the district court found that Thompson "would have closed the transaction for the purchase price of $2,900,000." Based on expert testimony, the court further found that by May 5, 2009, the date on which Mattson Ridge commenced this action against Ticor, the value of the Property was $1,000,000. In calculating the difference between those two figures, the court correctly determined that the "actual monetary loss or damage" due to the unmarketability of the Property's title was $1,900,000.

Yet that is not the end of the calculation of Mattson Ridge's recovery because section 7 of the policy, as explained above, caps Ticor's liability to the lesser of: (1)

---

3. The policy also gave Ticor the option to settle with the insured or third parties, or to tender the entire amount of insurance to the insured and terminate its obligations under the policy. But neither of these options is relevant here.

$1,286,000; or (2) the difference in value of the Property as insured and its value without the defect in title. Applying the liability cap, the district court found that the value of the Property subject to the defect was between $290,000 and $725,000, resulting in a total decrease in value of the Property of between $2,175,000 and $2,610,000 based on Thompson's agreement to purchase the Property in 2006 for its fair market value (without the defect) of $2,900.000. Because $1,286,000 is less than the difference in value of the Property with and without the defect (between $2,175,000 and $2,610,000), we conclude that the court properly limited Mattson Ridge's total recovery to $1,286,000 plus its out-of-pocket expenses of $11,169 to register title to the Property.[4]

Ticor argues, however, that Mattson Ridge's lost profits in this case were not sufficiently certain to permit recovery. As we have recognized, lost profits are an appropriate measure of damages "when the anticipated profits can be prove[n] to a reasonable, although not necessarily absolute, certainty." *N. Petrochemical Co. v. Thorsen & Thorshov, Inc.*, 297 Minn. 118, 125, 211 N.W.2d 159, 166 (1973); *see also Faust v. Parrott*, 270 N.W.2d 117, 121 (Minn.1978) (requiring lost profits to be proven with "reasonable certainty" in the insurance context). As the district court found based on trial testimony, Mattson Ridge received a number of offers for the Property, ranging from $2,600,000 to $2,900,000, and eventually accepted Thompson's offer of $2,900,000. By the

scheduled date of closing in August 2006, Thompson had obtained financing for the purchase and the only matter in dispute between Thompson and Mattson Ridge was the unresolved title defect. Based on these findings, the court expressly determined that "[b]ut-for the Defect, Thompson Builders would have closed the transaction for the purchase price of $2,900,000," a factual finding that may be set aside only if it is clearly erroneous. *See* Minn. R. Civ. P. 52.01; *see also Int'l Prod. Specialists, Inc. v. Schwing Am., Inc.*, 580 F.3d 587, 601 (7th Cir.2009) (reviewing whether damages were proven to a "reasonable degree of certainty" for clear error); *In re John Richards Homes Bldg. Co., L.L.C.*, 439 F.3d 248, 263 (6th Cir.2006) (same). Because there is a reasonable factual basis to support the court's award of lost profits to Mattson Ridge, we sustain the court's calculation of Mattson Ridge's damages. *See Cardinal Consulting Co. v. Circo Resorts, Inc.*, 297 N.W.2d 260, 266 (Minn.1980) (requiring a reasonable factual basis for an award of lost profits).[5]

## IV.

For the foregoing reasons, we affirm the district court's grant of partial summary judgment to Mattson Ridge on the question of Ticor's liability for its failure to defend and indemnify Mattson Ridge. However, we reverse the court of appeals' award of damages to Mattson Ridge in excess of the policy limit and remand to the district court for reinstatement of its

---

4. Because Ticor does not challenge the district court's award of $11,169 for Mattson Ridge's out-of-pocket expenses, we need not, and do not, decide whether such an award was consistent with the terms of the title insurance policy.

5. Ticor also argues that we must limit any recovery by Mattson Ridge according to the terms of the coinsurance provision in section

6 of the title insurance policy. However, Ticor did not raise this argument before either the district court or the court of appeals. We therefore decline to consider it here. *See Dykes v. Sukup Mfg. Co.*, 781 N.W.2d 578, 584 n. 2 (Minn.2010); *Republic Nat'l Life Ins. Co. v. Lorraine Realty Corp.*, 279 N.W.2d 349, 355 n. 2 (Minn.1979).

award of damages to Mattson Ridge in the amount of $1,297,169 plus prejudgment interest.

Affirmed in part, reversed in part, and remanded.

DIETZEN, J., took no part in the consideration or decision of this case.

WRIGHT, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

